## NANCY PAYNE v. WARREN R. PAYNE et als.

UNDER the eleventh section of the Act of 1850, defining the rights of husband and wife, which reads: "Upon the dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor, and the other half to the descendants of the deceased husband or wife, subject to the payment of the debts of the deceased," one-half of the common property goes, on the death of the husband, absolutely to the wife, and the remaining half is subject to the testamentary disposition of the husband; in the absence of such testamentary disposition, such half goes to the descendants of the husband—that is to a *particular class* of his heirs.

*Beard* v. *Knox*, (5 Cal. 252) upon this subject, affirmed.

The codicil to a will operates as a republication of the will, and the two are to be regarded as forming but one instrument, speaking from the date of the codicil.

Where a will gives all the testator's property to his wife, without naming his children, and subsequently a codicil is made referring to the will and mentioning the children: *Held,* that the codicil and the will must be read together as parts of one instrument in determining whether the omission to provide for

| 18 | 291 |
|----|-----|
| 81 | 243 |
| 18 | 291 |
| 94 | 673 |
| 18 | 291 |
| 119 | 574 |
| 18 | 291 |
| o129 | 154 |

the children was intentional, within the seventeenth section of the Act of 1850 concerning wills, which declares that if the testator omit to provide in his will for his children, they shall inherit the same share in his estate as if he had died intestate, "unless it shall appear that such omission was intentional."

*Held, further,* that the only object of the statute is to protect the children against omission or oversight, frequently arising from sickness, old age or other infirmity, or the peculiar circumstances under which the will is executed; and that whenever the children are present to the mind of the testator—and of this the fact that they are mentioned is conclusive evidence—the statute affords them no protection if provision is not made for them.

*Held, further,* that in this case, as the property left by the husband was common property, and as his will devises all his property to his wife and as the codicil mentions the children, the wife takes one-half the property in her own right, and the other half as devisee under the will.

*Query.* Whether a letter addressed by the testator to his wife, the executrix, and accompanying the will is admissible in evidence, to be read in connection with the will, to show that the omission of the testator to provide for his children in the will was intentional.

Where the will of a husband makes his wife sole executrix and devisee, with authority to dispose of the estate at public or private sale without the previous order of any Court: *Held,* that she may sell without any order of the Probate Court; that the one hundred and forty-eighth section of the act relating to the estates of deceased persons, declaring that "no sale of any property of an estate shall be valid unless made under order of the Probate Court," applies only to sales in cases not provided for by the will; and that the statute is operative only in the absence of testamentary power.

Appeal from the Twelfth District.

The following are copies of the will of Theodore Payne, the letter accompanying the will addressed to his wife, and the codicil to the will, which are mentioned in the opinion of the Court:

[COPY OF THE WILL.]

" In the name of God, amen. I, Theodore Payne, of the city of San Francisco, in the State of California, being of sound mind and memory, do make, publish and declare this my last will and testament, in the manner following: I hereby give, grant, devise and bequeath all my estate, real, personal and mixed, of every name and description and wheresoever situate, to my beloved wife, Nancy Payne, to have and to hold the same to her and to her heirs and assigns forever. I hereby appoint my said wife to be the sole executrix of this my last will and testament, hereby revoking all

former wills by me made, and I hereby expressly declare that I waive the giving by my said executrix of any security for the faithful performance of the trust hereby reposed.

" And I hereby authorize and fully empower her to sell the whole or any portion of my estate at public or private sale as she may see fit, and for cash or on credit, without any previous application to any Court for authority so to do.

" In witness whereof, I have hereunto set my hand and seal this fourteenth day of August, 1857.

" (Properly attested.)          THEODORE PAYNE."

[COPY OF THE LETTER ACCOMPANYING THE WILL.]

." SAN FRANCISCO, August 14th, 1857.

" *My Dear Wife:*—In addition to my last will and testament, bearing even date herewith, I would make an explanation and also a request. I have left all my worldly possessions to you exclusively, and have done so because my confidence in your prudence and ability to manage my estate is unbounded. I have made no mention as to our dear children, knowing that you will do all that can be done for their welfare in every respect. To your judgment and maternal affection I trust their interests with a father's love. You are well aware that I have always entertained a deep affection for my sister, Hannah C. Payne (now the wife of William R. Clarkson, of New York city) and as my present pecuniary relations are such as to prevent any bequest on her behalf, I would ask of you this request : As soon as my estate is perfectly free from debt and you can grant what I desire, it is that you give her the amount of $3,000, to be invested for her sole use and benefit, and in such a manner as may be most agreeable to all parties concerned. To the Great Creator, who directeth all things, I commend the welfare of those whom I love and cherish. God bless you my beloved wife and pets.

" With a husband's devotion,<br>(Signed)      " THEODORE PAYNE."

[COPY OF THE CODICIL TO THE WILL.]

" In the name of God, amen ! I, Theodore Payne, being about

to embark from New York to San Francisco, make, publish and declare this codicil to my last will and testament, which is dated in August, 1857, and now remains in San Francisco, in manner and form following, viz:

" In case of the death of my wife and all my children before arriving at San Francisco, I give, devise and bequeath all the personal property of which I may die possessed to my sister, Hannah C. Clarkson, wife of William R. Clarkson, of the city of New York, absolutely; and I give, devise and bequeath to her all my real estate for the period of her natural life; after her death, I give, devise and bequeath the whole remainder of my real estate to the brothers and sisters of my wife, viz: Ithamar W. Ritch, John W. Ritch, Mary Ritch and Sarah J. Sedgwick, all of the city of New York, and Kate Houseman, of the city of Sacramento, California; and in case of the death of my wife and children before arriving in San Francisco, so that this codicil takes effect, I name, constitute and appoint Horace P. Janes, of the city of San Francisco, executor of my will, and direct that he give no security for the performance of his duties.

" This codicil is only to be effective in case of the death of my wife and all my children before reaching San Francisco.

" Witness my hand and seal this ninth day of March, 1861.

(Signed)      " THEODORE PAYNE, [L. S.]

" Signed, sealed, published and declared by the said Theodore Payne, as and for a codicil to his last will and testament, in the presence of us and each of us, who at his request and in his presence, and in the presence of one another, have hereto set our names as witnesses this ninth day of March, 1861.

(Signed)      " JOHN T. DOYLE, New York city.
" JAMES B. WILLIAMS, 48th St. Mark's
" Place, New York city."

The testator, Payne, was a resident of the city and county of San Francisco at the time of his death, and most of his property was situated there. He left surviving him a widow, Nancy Payne, the plaintiff, and three infant children, the defendants,

Warren R. Payne, Theodore F. Payne and Kate W. Payne, the issue of the marriage between him and the said plaintiff. All other material facts are stated in the opinion of the Court.

*D. Lake*, for Appellants.

*Hepburn & Dwinelle*, for Respondent.

I.   It is urged that as by section eleven of the Act of 1850, defining the rights of husband and wife, it is provided that " upon the dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor, and the other half to the descendants of the deceased husband or wife, subject to the payment of the debts of the deceased," it therefore follows that the descendants of the decedent, Payne, became forced heirs at his death to one-half of the common property.

The cases of *Estate of Buchanan*, (8 Cal. 509) *Smith* v. *Smith*, (12 Id. 225) and *Scott* v. *Ward* (13 Id. 469) construing the above provision of the statute, decided no point other than that decided in *Beard* v. *Knox*, (5 Cal. 252) that " the Act of April 17th, 1850, giving to the husband the entire control of the common property, does not invest him with power to *dispose of the same by devise whereby the rights of the wife may be defeated*. This we do not dispute, and may, moreover, admit that any act of the husband, even in his life time, by gift, concealment or otherwise, in fraud of his wife's ultimate interest, would be set aside in favor of his wife, as acts in fraud of creditors are avoided under the Statute of Frauds.   But this does not touch the question as to what becomes of the husband's share of the common property at his death.

The words in the statute, " the other half to the descendants of the deceased husband or wife," are to be construed merely as words of limitation, and by limitation is meant " the definition or circumscription of the interest which the husband possessed." (1 Steph. Com. 278, note ; Burrill's Law. Dic. title—Limitation of Estate.) The rule in *Shelly's case* (4 Kent, 226) furnishes a perfect analogy and solution of these terms.   It is to the effect that where the ancestor has a freehold estate, and in the same conveyance an estate

is limited to *his heirs* in fee, the word heirs is a word of limitation and entitles the ancestor to the whole estate. Now here by statute the estate of the husband is defined to be an absolute estate, subject to the right of the wife to take one-half at his death, the other half limited over to "his descendants," a sufficient synonym for "heirs" in applying the analogy of the rule, because included in heirs. The legal effect is to make him absolute owner with full *jus disponendi* of the half of the estate, but to deprive him of any testamentary *jus disponendi* over the other half, which goes to his surviving wife.

Not only is this so, taking the above cited authorities upon what they *directly* decide, and *e converso* for their *indirect* effect, but it is expressly decided to be the law in the case of *Beard* v. *Knox*, (5 Cal. 252). The rule laid down in that case has never been questioned in any subsequent decision, and a large amount of property has been distributed under it.

There is another consideration which shows that this construction of the statute is correct. It is, that any other construction virtually nullifies the Statute of Wills. The statute (Laws 1850, Ch. 72, sec. 1) provides that "every person over the age of eighteen years may dispose by will of all his estate, real and personal." Will it be said that his interest in the common property is no part of "all his estate?" Will it be said that "every person" is to be construed to mean "every unmarried person?" or that "all his estate" means only "all his separate estate?" And this, too, when it is a presumption of law that a married person has no separate estate? (*Smith* v. *Smith*, 12 Cal. 224; *Meyer* v. *Kinzer*, 12 Id. 253; *Scott* v. *Ward*, 13 Id. 470; *Tryon* v. *Sutton*, 13 Id. 493; *Pixley* v. *Huggins*, 15 Id. 131; *Mott* v. *Smith*, 16 Id. 557.)

If we are cited to the law of 1861, (Ch. 323, sec. 1) which amends section eleven of the Act of 1850, defining the rights of husband and wife, as giving a construction of the law different from what we contend for, we reply:

First—That the Legislature has no power to give a retrospective construction to a statute. (Sedg. Stat. and Cons. Law, 252.)

Secondly—That it does not appear what view the Legislature

took of the point in controversy. What does appear is merely this: that whereas heretofore the wife's descendants took her half of the common property, hereafter it shall go to the husband; and whereas heretofore the descendants of the husband, in case of his intestacy, took his half of the estate, and in default of such descendants the wife took it, hereafter, in default of such descendants, the husband's half shall not go to the wife, but shall be distributed according to the statute of descents and distributions. In other words, the wife hereafter shall have no interest in the common property, except a contingent ownership of one-half, limited upon her possible survivorship of her husband, while the husband shall have the same interest and *jus disponendi* that he has heretofore had in the common property, with this further provision, that in case he dies intestate and without descendants—*i. e.*, issue of his body, and their issue—his half shall not go to the wife as survivor, as heretofore, but shall be distributed according to the statute of descents and distributions. The clause in the Statute of 1861—"in case of the death of the husband, if there be no descendants of the husband, one-half of the common property may be subject to his testamentary disposition, and in the absence of any such testamentary disposition, shall be subject to distribution," etc.—is not to be interpreted as giving, for the first time, such testamentary disposition to the husband; for, if it be conceded that he had it already, it would be difficult to have provided for the conditional distribution of the estate without expressly reserving the testamentary disposition in so many words, as has been done in the statute. Otherwise, it would have been argued that the statute, being silent on the subject, had taken away the power of testamentary disposition.

Thirdly. If the law of 1861 be considered to have any other effect than that above indicated, we contend that the Legislature mistook the existing law, and that we are not to be prejudiced by the mistake. (*Ashley's case*, 4 Pick.) We insist, then, that the decedent, Payne, had such a present vested interest in the common property as enabled him, in making a will of "all his estate" under the statute of wills, to devise one-half of the common property to

his wife, and that she, already taking the other half as the survivor of the community, thus became possessed of the whole.

II.   The Court has jurisdiction of the present suit to prevent the clouding of the title by illegal or doubtful acts as well as multiplicity of suits and litigation, appeals and cross appeals; it will interfere by way of precaution and prevention, and settle the rights and interests of the parties by a decretal order, which shall guide them in their dealing with the estate, and which sometimes even settles the principle which is to control the final settlement in the Probate Court.   (2 Story's Eq. Jur. sec. 1065; Prac. Act, sec. 377.)

III.   The codicil to the will of Payne shows that the omission to provide for his children in the will was intentional, for he mentions his children in that instrument, which shows that he had them in his mind at the time he wrote it.

His making a codicil instead of a will shows that he had the previous will in his mind, and that he approved it except to the extent that it was altered by the codicil.

This provision of the seventeenth section of our Statute of Wills is evidently taken from the Statute of Wills of Massachusetts of 1784. By that statute any child not having a legacy given to him in the will of his parent, inherited " as if such parent had died intestate."

The preamble to that statute sets forth that the children of testators, through anguish or oversight, were often omitted, and on this ground where the testator mentioned the child, though he left no legacy, it was held that this fact was sufficient to show that the testator had not forgotten the child, and therefore intended to disinherit it.   (Terry v. Foster, 1 Mass. 146.)

On the same principle, where a testator devised estate to his grandchildren, " children of my daughter," but gave no legacy to his daughter, it was held that the daughter being mentioned was not entitled to a portion of the testator's estate as if he had died intestate as to to her.   (Wild v. Brewer, 2 Mass. 569; Church v. Crocker, 3 Id. 13; Wilder v. Goss, 14 Id. 357.)

It thus appears that a mention by the testator in his will, of the party not provided for, is evidence of his intention not to provide for that party.   The reason is obvious.   The object of the

seventeenth section is not to intefere with the power of parents to dispose of their property as they see fit, but to protect children against omission or oversight arising from sickness, old age, or other infirmity.    Where therefore, the testator mentions his child, or children, it shows that they are present to his mind, and if they are not provided for, it can only be for the reason that he so intended.

IV.   Mrs. Payne has power by the will to dispose of the estate without the intervention of the Probate Court.

Section 148 of the Probate Act, providing that " no sale of any property of an estate shall be valid, unless made under order of the Probate Court," applies merely to sales in cases not provided for by the will.   (*Norris* v. *Harris*, 15 Cal. 255.)

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

This is an amicable suit to determine the rights of the parties under the will of Theodore Payne, late of the city and county of San Francisco.   Payne died on the ninth of April, 1861, possessed of a large property in real estate, situated in that city, and leaving surviving him a widow, the plaintiff, and three infant children, the defendants, the lawful issue of himself and plaintiff.   The real estate was common property belonging to the community existing between him and the plaintiff.   By a will bearing date on the fourteenth of August, 1857, he gave all his estate, real and personal, to his wife, and appointed her sole executrix of the will, declaring that he waived all security for the performance of the trust reposed in her ; and empowered her to sell the whole or any part of the estate, at public or private sale, as she might see fit, and for cash or on credit, without any' previous application to any Court for authority for that purpose.   In this will the children are not named.   A letter from the decedent accompanied the will, addressed to his wife, in which he states, that he left his entire property to her, because of his unbounded confidence in her prudence and ability to manage the same ; and that he made no mention of his children, knowing that she would do all that could be done for their welfare, and that to her judgment and maternal affection he trusted their interests.

On the ninth day of March, 1861, being about to embark from New York to San Francisco, he made a codicil, in which he refers to his will, stating its date, and provides, in case of the death of his wife and children before his arrival in San Francisco, for a different disposition of his property, and for the appointment of another person as executor of his will, and concludes with a declaration that the codicil is to be effective only in case of such death of wife and children.

The estate is incumbered with debts, and the plaintiff, to whom letters testamentary have been issued upon probate of the will, has endeavored to dispose of a portion of it to pay them, but has met with embarrassments and difficulties, arising from doubts as to her rights and authority under the will; and, therefore, in the language of the complaint, " in order to avoid doubt, future litigation, multiplicity of suits and consequent loss and expense, and that her acts in the premises may be clearly lawful, and not calculated to cloud the title of the said real estate, and that the interests of all parties in the said estate may be guarded and protected," she prays " the aid and beneficent interposition of the Court " in the construction of the will, and to define the interest she took under the same, and her authority as executrix.   She claims: *first*, that she took the whole estate of which her husband died seized—one-half in her own right by virtue of the community existing between him and herself, and the other half as sole devisee under the will; but *second*, if the children are held to be forced distributees of the one-half of the estate in the same proportions to which they would have been entitled in case their father had died intestate, that then she has the right, as executrix under the will, to sell the estate or any portion of it, without the order or interference of the Probate Court, for the payment of the debts of the deceased, or for any other purpose, and to pass to the purchaser such right and interest as he possessed.

The defendants, appearing by guardian appointed for that purpose, submit themselves to the jurisdiction of the Court, and unite in the prayer of the plaintiff for the construction of the will, but insist, in substance, that the omission of the testator to provide for them in his will was unintentional, and that they take, in conse-

quence, the same share to which they would have been entitled had he died intestate ; and that the plaintiff possesses no authority to sell the estate, without the previous order of the Probate Court.

The Court below held that the plaintiff took the entire estate ; and hence the present appeal by the defendants.

The eleventh section of the Act of 1850, defining the rights of husband and wife, provides that " upon the dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor, and the other half to the descendants of the deceased husband or wife, subject to the payment of the debts of the deceased ; " and it is urged that, by virtue of this section, the defendants—the descendants of the deceased Payne—became forced heirs at his death to one-half of the common property. We do not give such effect to the section in question. As we construe it, one-half of the common property goes absolutely to the wife, and the remaining half to the descendants of the deceased husband—that is, to a particular class of his heirs— if not made by him the subject of testamentary disposition. Such was the construction given by this Court in *Beard* v. *Knox* (5 Cal. 252). In that case, the husband undertook to dispose by will of the entire common property. He gave to his wife a legacy of five hundred dollars, and bequeathed the balance of the property to his daughter ; but the Court held, that he could only dispose of one undivided half, and that the wife was entitled to the remaining half, and also to the legacy, which was decreed to be taken out of the half which was subject to his disposition. " The deceased," said the Court, " had no authority to dispose of but one-half of the property ; *this he might do to whomsoever he pleased.*" That case was decided in July, 1855, and the decision has never been questioned. It has furnished a rule under which property of vast amount and value has been distributed. We have no doubt of its correctness ; and we only affirm and follow it, in holding, as we do in the present case, that the plaintiff took one undivided half of the common property in her own right by virtue of the community existing between herself and husband ; and that the remaining half was subject to his testamentary disposition. Whether the plaintiff took that remaining half as sole devisee depends upon the solution of the

question whether the omission of the testator to provide in his will for his children was intentional. The statute declares, that in case of such omission, the children shall be entitled to the same share in his estate as if he had died intestate, "*unless it shall appear that such omission was intentional.*" (Laws of 1850, chap. 72, sec. 17.) The position of the defendants is, that the will must be read alone ; that the letter accompanying it is inadmissible ; and that the codicil cannot be added to it to show that the omission was intentional. As to the admissibility of the letter, it is unnecessary to express any opinion. (See on this point, *Wilson* v. *Fosket*, 6 Met. 402.) As to the codicil, we think the position untenable. The codicil refers to the will, and operates as its republication, and the two are to be regarded as forming but one instrument, speaking from the date of the codicil.* (1 Jarman on Wills, 174 ; 1 Williams on Executors, 175 ; *Haven* v. *Foster*, 14 Pick. 543 ; *Van Cortlandt* v. *Kip*, 1 Hill, 591.) When thus considered together— as parts of one instrument—it is evident that the omission to provide for the children was intentional. The children are mentioned three times in the codicil, showing that they were in the mind of the testator at the time, and not overlooked in the disposition of his property. And the only object of the statute is to protect the children against omission or oversight, which not unfrequently arises from sickness, old age, or other infirmity, or the peculiar circumstances under which the will is executed. When, however, the children are present to the mind of the testator, and the fact that they are mentioned by him is conclusive evidence of this, the statute affords no protection if provision is not made for them. The inference follows that no provision was intended. (See *Terry* v. *Foster*, 1 Mass. 146 ; *Wild* v. *Brewster*, 2 Id. 570 ; *Church* v. *Crocker*, 3 Id. 18 ; *Wilder* v. *Goss*, 14 Id. 357.) We are of opinion that the plaintiff took the remaining half of the common property as devisee under the will, and is thus possessed of the entire estate.

---

* "It has long been settled law that the republication of a will is tantamount to the making of that will *de novo;* it brings down the will to the date of the republishing, and makes it *speak*, as it were, *at that time.* In short, the will so republished is a new will." (1 Williams on Executors and Administrators, 179.)

The only other question for consideration is, whether the plaintiff possesses authority to dispose of the estate without the previous order of the Probate Court; and upon this we have no doubt. The will, in terms, confers the authority, and the one hundred and forty-eighth section of the act relating to the estates of deceased persons, declaring that "no sale of any property of an estate shall be valid unless made under order of the Probate Court," applies only to sales in cases not provided for by the will. The statute is only operative in the absence of testamentary power. (See *Norris* v. *Harris*, 15 Cal. 256.)

Judgment affirmed.