Points decided.

# SAMUEL A. MORRISON *et al. v.* JAMES BOWMAN *et al.*

WIFE'S INTEREST IN THE COMMON PROPERTY.—Upon the death of the husband, the wife is entitled to half the common property, subject to the payment of the debts of the community.

LAST WILL AND TESTAMENT OF HUSBAND.—The husband has not the power by a last will and testament to dispose of the wife's interest and estate in the common property.

ELECTION OF WIFE TO TAKE UNDER HER HUSBAND'S WILL—ITS EFFECT. — If the husband, by his will, undertakes to dispose of the wife's half of the common property, as well as his own, to her and others, and she elects to accept the benefits intended and provided for her by the will, she thereby becomes divested of her title in and to the undivided half of the common property, provided an assertion of her community right and interest would necessarily defeat the objects of the will.

IDEM.—If, by a just construction of the will, it appears that the testator did not intend to dispose of his wife's share of the common property, her acceptance of a bequest or devise under the will will not operate as an election to relinquish her right to one half of the common property.

ACCEPTANCE OF BENEFITS UNDER THE WILL IS A CONFIRMATION OF IT.—Though a testator has not the power to dispose of the property of another person by his will, still if he undertakes so to do, and such person accepts a bequest or devise under the will, such acceptance is a confirmation of the testamentary dispositions of the testator.

DEED MADE BY AN ATTORNEY OR AGENT.—*Held,* that a deed purporting in the body of it to be the deed of Stephen Smith, but signed "Stephen Henry Smith, attorney in fact of Stephen Smith," is not the deed of Stephen Smith, even though the person describing himself as attorney in fact of Stephen Smith had authority to execute a deed of conveyance of the premises described for and in the name of Stephen Smith.

ATTORNEY IN FACT AND PRINCIPAL.—A deed for land, executed by an attorney in fact for his principal, must be executed in the name of the principal, otherwise nothing will pass by the deed.

REIMBURSEMENT OF ADVANCES MADE BY ONE ACTING AS TRUSTEE.—Where one supposed he had acquired the legal title to land in trust for certain devisees under a will, and under that belief, in discharge of his supposed trust, paid off encumbrances existing on the land, and expended money necessary for its preservation, *held,* that he was entitled to be reimbursed what he had so paid, with interest, notwithstanding he had not in fact acquired the legal title to the land.

DEED OF EXECUTOR, WHO IS ALSO AN HEIR, DEVISEE, AND LEGATEE.—A deed of conveyance by an executor of land belonging to the estate, in which he himself has an interest, purporting to convey in his individual capacity and also as executor, passes to the grantee his individual interest, but not the rights and interests of the heirs therein, which the executor had no authority, under the will, to convey.

SETTING ASIDE A DECREE OF FORECLOSURE AND DEED MADE THEREUNDER.—If a testator has mortgaged land devised by his will, and after his death, one who erroneously supposed he had acquired the legal title before the death of the testa-

tor buys in the property under the mortgage sale and acquires the legal title, which by his own election and the election of the devisees he holds in trust for them, a Court of equity will not set aside the decree of foreclosure and deed made thereunder. ·

SALES BY TRUSTEE OF PORTIONS OF TRUST ESTATE.—If one who holds the legal title in trust for devisees under a will, makes advances to pay encumbrances on the trust estate, and then sells portions of the property, a Court of equity in taking an account will confirm the sales and charge the trustee with the proceeds.

JUDGMENT SHOULD CORRESPOND WITH THE RELIEF SOUGHT.—It is not the duty of the Court by its judgment to extend to a party a real or supposed benefit which he does not ask nor manifest a desire to obtain.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

The facts are stated in the opinion of the Court.

*Sidney L. Johnson,* for Appellant, contended that as the "Blucher Rancho" was common property, the widow was entitled by law to one half of it, and that a fair construction of the will did not manifest an intention on the part of the testator to exclude the widow of her community right, and that therefore the widow did not by her acceptance of the devise to her in the will divest herself of her half of the rancho, and that her deed of release to the appellant vested in him the title to her half.

In support of his construction of the will he cited *Hall* v. *Hall,* 2 McCord's Ch. R. 269 ; 8 Paige, 323 ; *Adsit* v. *Adsit,* 2 John. Ch. 448 ; *Wake* v. *Wake,* 1 Vesey. Jr. 335 ; Meiggs' Tenn. R. 378 ; *Parker* v. *Parker,* 10 Texas, 83 ; *Gibson* v. *Gibson,* 17 Eng. Law and Eq. Rep. 353 ; *Havens* v. *Sackett et al.,* 15 N. Y. 365 ; and *Havens* v. *Havens,* 1 Sand. Ch. R. 324.

*D. O. Shattuck,* for Respondents.

*Edmond L. Goold,* also for Respondents, contended that by his will the husband assumed ownership over the whole of the community property, and intended to give it all away, and that as by his will he left a third of his separate estate to his widow, she was put to her election, and having accepted the bequest, is forbidden to disappoint the will by demanding half the community, and cited 2 Williams on Ex. 1,263 ; 2

Story's Equity Jur., Sec. 1,076; *Ritter* v. *McLean*, 4 Ves. 531; *Whistler* v. *Webster*, 2 Ves. Jr. 371; *Blake* v. *Bunbury*, 1 Ves. 523; 4 Bro. C. C. 21; *Finch* v. *Finch*, 1 Ves. 534; *Wilson* v. *Mount*, 3 Ves. 191; 1 Jarman on Wills, [*384]; *Hyde* v. *Baldwin*, 17 Pick. 303; 6 Dow, 149; 4 Ves. 531; 2 Ves. 693; *Druce* v. *Denison*, 6 Ves. 385; *Miall* v. *Brain*, 4 Madd. 119; *Shuttleworth* v. *Greaves*, 4 Mylne & Craig, 35; and *Reaves* v. *Garrett*, 34 Ala. 558.

By the Court, CURREY, J.

Stephen Smith, of Bodega, in Sonoma County, died in November, 1855, possessed of a large estate, real and personal, in said county. In August, 1854, he made his last will and testament by which he undertook to make disposition of his property. At the time of his death he left surviving him his wife, Manuella T. Smith, who was the mother of three of his children. He also left surviving him four other children, the offsprings of a former marriage. At the time of his death he owned the Bodega Rancho, consisting of eight leagues of land, and he and his wife owned the Blucher Rancho, consisting of six leagues, as common property. By his will, which was duly proved soon after his death, Stephen Smith devised and bequeathed to his wife Manuella his house and household furniture at Bodega, to have and to hold during her life; and also he devised and bequeathed to her one third of the Bodega Rancho, and one third of his stock of cattle, etc., except the portion thereof which might be applied to the payment of his debts and funeral expenses, to have and to hold during her life, with remainder to his children born of her, in fee, share and share alike; and to the children last mentioned, he devised in fee the other two thirds of the Bodega Rancho, share and share alike, with the proviso that if any of such children died without issue, that in such event, the share or shares of such deceased child or children, should descend to and be inherited by the brothers and sisters of such deceased child or children of the full blood, to the exclusion of those of the half blood.

The testator devised to Stephen Henry Smith, his son by his former wife, a half league of the Blucher Rancho in fee, and to Giles Smith, also his son by his former wife, and to Ellen Morrison and Elvira Pond, his daughters by his former wife, each a life estate in a half league of the Blucher Rancho, with remainders over in fee. And to his grandchildren born in lawful wedlock who should be living at the time of his death, the testator devised in fee, share and share alike, one league of the Blucher Rancho. After thus providing for the children by his former wife, the testator declared, in the tenth clause of his will, that he had, as he believed, still left and undisposed of " by the foregoing provisions of this will, three square leagues of land, part and parcel of my Blucher Rancho." He then declared that it was his design to sell and dispose of the same or portions thereof during his lifetime for the purpose of raising means to pay and discharge his subsisting debts and liabilities; but in the event that he should not sell and dispose of such three leagues, he directed his executors to sell and dispose of the same, or the portion thereof which should remain unsold at the time of his death, and after the payment of his debts, funeral expenses and the expenses of the settlement of the estate, to divide the proceeds arising from such sale as follows: one third to his wife Manuella, and the other two thirds equally among all his children living at the time of his decease; providing, however, that if any of his children should die before the testator, leaving a child or children, then such child or children should take by representation the share to which the parent would have been entitled if he or she had survived the testator. In connection with his direction as to the distribution of the residue of the proceeds arising from the sale of these three leagues, the testator expressly ordered and directed his executors to require, demand and collect from his children, Stephen Henry Smith, Giles Smith, Ellen Morrison and her husband, and Elvira Pond and her husband, the repayment to his estate of all sums of money by him advanced for them or on their account, and all sums due him for goods and chattels sold to them or either of them,

excepting any advances made on account of his daughters for their education and support before their marriage.

Early in November, 1855, Stephen Smith was stricken down with paralysis, and died on the 16th of that month, at the house of the appellant, in San Francisco.   One week previous to his death his son, Stephen Henry Smith, who, it appears, was the attorney in fact of his father, appointed by an instrument in writing, under seal, in 1849, attempted to convey to C. B. Polhemus the Blucher Rancho.   The deed executed by Stephen Henry Smith was in form the deed of Stephen Smith from the beginning to the end of the *testamonium* clause, but it was signed " Stephen Henry Smith, attorney in fact of Stephen Smith."   The consideration expressed in this deed was seven thousand five hundred dollars.   On the 11th of January, 1856, Polhemus undertook to convey by deed the property to Bowman, the appellant.   The consideration expressed in the deed was one dollar.   At the time the deed was executed by Stephen Henry Smith to Polhemus, Stephen Henry resided with Bowman, who was his brother-in-law, and the transaction of the conveyance on the one part, and the purchase on the other, was managed by Stephen Henry and the appellant. Stephen Smith was not consulted respecting the matter, though the deed was executed in the house where he lay sick; nor does it appear that any portion of the consideration price expressed in the deed was in fact paid, though Polhemus and Bowman were examined as witnesses on the subject.   At this time there was a mortgage on the Blucher Rancho, dated the 2d of February, 1855, for ten thousand dollars, bearing compound interest at the rate of three per cent per month, payable in advance, and also a mortgage on the Bodega Rancho, dated the 29th of May of the same year, for twelve thousand dollars, bearing the like rate of interest.   These mortgages were executed by Stephen Smith.

From the testimony in the case, upon which both parties place reliance, it appears that in May, 1855, Stephen Smith spoke of selling the Blucher Rancho, and said he would have been willing to take for it thirty or thirty-five thousand dol-

lars, with which he could have paid his debts and dispensed with the loan he was then obtaining upon mortgage of the Bodega Rancho; and in October, previous to his death, he informed one of the witnesses that he had made arrangements with Polhemus to loan him enough to pay his debts, which he stated, according to the recollection of the witness, to be about thirty thousand dollars, and that he was to pay interest for the use of the money at the rate of one or one and a half per cent per month, and for this he was to execute a deed of the Blucher Rancho in trust, to be sold by the party from whom he was to obtain the money, who was to reimburse himself therefrom the amount due him.

The testator nominated his wife, Manuella T. Smith, executrix, and William A. Richardson and James Wilson executors of his last will and testament. Mrs. Smith became qualified as executrix. The executors named failed to do so.

In June, 1856, the executrix commenced an action in the District Court in Sonoma County against James Bowman, Stephen Henry Smith and C. B. Polhemus, for the purpose of setting aside the conveyance executed by Stephen Henry Smith to Polhemus. While that action was pending, in 1856, the owners of the mortgage on the Bodega Rancho obtained a decree in the Circuit Court of the United States foreclosing such mortgage. Before then, in March, Bowman had deposited with the holders of the demand secured by the mortgage on the Blucher Rancho the amount due thereon, leaving, however, the mortgage outstanding in the hands of the mortgagees, subject to his control and direction.

On the 7th of August, 1856, the executrix and Bowman compromised the action commenced in the District Court in Sonoma County. By this compromise Bowman executed to the executrix a bond in the sum of one hundred thousand dollars, with a condition thereunder written—first reciting the commencement of the action in Sonoma County against him and others to cancel the deed executed by Stephen Henry Smith on the 9th of November, 1855, and the deed executed by Polhemus to Bowman, and also reciting the existence of

the two mortgages mentioned, and further that the executrix had agreed to dismiss her action against him and others, and that he had agreed with her, in consideration of the premises, and of the dismissal of such action, and of the sum of five dollars to him paid, to hold and keep the estate of Stephen Smith, deceased, and said executrix free and clear of and from any claim or demand of Stephen Henry Smith, Ellen Morrison, Elvira Pond and Giles Smith, under or by virtue of the last will and testament of said Stephen Smith, deceased, or any claim or demand of any kind or description by them or either of them against said estate, and then concluding as follows: "Now if the said James Bowman shall well, truly and fully pay, satisfy and discharge the said mortgage deeds and each of them, and any and all costs and expenses made or incurred by the commencement of any and all suits heretofore brought or that are pending, or that may be hereafter commenced to foreclose the said mortgages, and keep and hold the estate of the said Stephen Smith, deceased, free and clear of any and all obligations on account of said mortgages, then and in that case this obligation shall be void, otherwise to be and remain in full force and effect." At the same time the executrix and Bowman entered into an agreement in writing, under seal, in which was recited the commencement of the action in Sonoma County, and its object and her agreement to dismiss it; in consideration of which followed a covenant on his part to pay, settle and satisfy Stephen Henry Smith, Ellen Morrison, Elvira Pond and Giles Smith for all claims and demands which they or either of them had or might thereafter have against the estate of their father under or by virtue of his last will and testament, and to pay the costs of such action. On her part the executrix agreed to dismiss her action against Bowman and others, and also to dismiss and discontinue an action which she had brought against Samuel Morrison and G. H. Pond, and to cancel all demands against the said Morrison and Pond.

On the 24th of October, 1856, Bowman paid twenty-one thousand five hundred and thirty-seven dollars and fifty cents in discharge of the debt secured by the mortgage on the

Bodega Rancho. This being done, Manuella T. Smith, the widow of Stephen Smith, deceased, and the executrix of his estate, executed and delivered to Bowman, Polhemus and Stephen Henry Smith a deed bearing date the 4th of December, 1856, by which, for a valuable consideration received from them, she released and forever discharged them of and from all actions and causes of action, and of all debts and demands, and of all claim, demand, right and interest of, in and to the Blucher Rancho, which she individually or as executrix of the estate of Stephen Smith, deceased, had or might have in the same and every part and parcel thereof, and of all actions or causes of action which she individually as executrix aforesaid, or otherwise, could or might have against the said Bowman, Polhemus and Stephen Henry Smith by reason of any deed, matter or thing whatsoever, connected with the Blucher Rancho, or in any way affecting the title to the same, as vested at the time in them or either of them.

On the 24th of March, 1856, Bowman advanced to Pioche, Bayerque & Co., the owners and holders of the debt secured by the mortgage on the Blucher Rancho the sum due for principal and interest thereon, but received from such firm no formal assignment of the debt and mortgage. After this an action was commenced in the United States Circuit Court, in the name of Jules B. Bayerque as plaintiff, against Manuella T. Smith, executrix, etc., S. Henry Smith, Giles Smith, Samuel A. Morrison, and Ellen Morrison, his wife, and Elvira Pond as defendants, to foreclose the mortgage; and on the 25th of October, 1856, a decree of foreclosure was entered; and on the 9th of the following December the property, the Blucher Rancho, was sold under the decree to the plaintiff Bayerque. On the 20th of May, 1857, Bowman having fully settled with Bayerque, the latter assigned to him the certificate of the sale under the foreclosure. The officer who made the sale under the decree executed a deed for the premises to Bowman on the 10th of June, 1857. The sum claimed to have been paid by Bowman in discharge of the property from this mortgage amounted to twenty-one thousand and eighty-nine dollars.

The plaintiffs brought their action to have the deeds executed by Stephen Henry Smith to C. B. Polhemus, and by Polhemus to James Bowman set aside, and to have the mortgage on the Blucher Rancho declared as paid, satisfied and discharged, on the 24th of March, 1856, and that the decree of foreclosure and the sale and conveyance of the Blucher Rancho thereunder be decreed to be fraudulent and void. Or in case the Court should be of opinion that the decree of foreclosure and the conveyance made under and by virtue of it, should be held valid and effectual, that then the said Bowman might be decreed to hold the title to the property as trustee for the plaintiffs and the other heirs and legatees of Stephen Smith, deceased, and that an account should be taken, etc.

Bowman answered, controverting the charges of fraud contained in the complaint, but acknowledging that he held certain individual interests in the property in trust for the plaintiffs; but he averred that he had expended large sums of money for the benefit of their interests; that he was ready to account, and on being reimbursed, to convey to them their interests; and asking as a counter claim, that if they should refuse or neglect to pay him within a reasonable time to be fixed by the Court, the amount ascertained to be due him upon the accounting, then their interests should be decreed to be sold as on foreclosure, and that he be paid out of the proceeds of such sale; and he also prayed for such further or other relief in the premises as the nature and circumstances of the case might require.

Of the defendants, Bowman was the only one who answered. The cause was tried and an interlocutory decree pronounced by this Court, declaring the deed executed by Stephen Henry Smith to C. B. Polhemus, and the deed executed by Polhemus to Bowman, and the deed executed under the foreclosure decree to said Bowman, null and void. The Court also decreed the agreement entered into between Manuella T. Smith, executrix, etc., and the said Bowman, and her deed releasing to him her interest in the Blucher Rancho, to be null and void. The

44

Court then directed a reference, for the purpose of taking and stating an account of the moneys received and disbursed by the defendant Bowman on account of the estate of Stephen Smith, deceased, and also directed the referee to report the proportionate share which each of the infant plaintiffs should pay of the disbursements necessarily expended for the protection of the Blucher Rancho. Accordingly, an account was taken and stated, and thereupon the Court rendered a final decree, directing the right, title and interest of the devisees under the will in and to the three leagues of the Blucher Rancho, which the testator had directed to be sold for the payment of his debts, to be sold by the Sheriff; and he was further directed, after paying the expenses of the action, to pay to the defendant Bowman the amount found due him, with legal interest thereon from the 1st of October, 1863, provided the proceeds of such sale were sufficient for the purpose; and the decree also provided the mode of making up any balance that might be due Bowman, in case the property so directed to be sold should be insufficient for the purpose.

From the several decrees in the case, and from an order refusing to grant a new trial, the defendant Bowman has appealed, and the principal ground of complaint which he makes is, that the District Court erred in holding and deciding that the appellant was not the owner of one half of the Blucher Rancho.

*Right of husband to devise wife's half of common property, and effect of her acceptance under the devise.*

The Blucher Rancho was the common property of Stephen Smith and his wife Manuella. When he died she was entitled to an undivided half of it, subject to the payment of the debts of the community. The husband had not the power to dispose of the wife's moiety by his last will and testament; and the only question now to be determined respecting her share and interest in the property is whether by accepting a devise and bequest under the will she elected to release and surrender her right to the half of the common property, and whether

by her acceptance of the donations under her husband's will she did in fact, by implication, divest herself of her title in and to the half of the Blucher Rancho.

Jarman, in his work on Wills, says: "That he who accepts a benefit under a deed or will, must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it. If, therefore, a testator has affected to dispose of property which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him, must make good the testator's attempted disposition; but if on the contrary, he chooses to enforce his proprietary rights against the testator's disposition, equity will sequester the property given to him for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights." (1 Jar. on Wills, 385.) Election, in the sense here used, is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases when there is a clear intention of the person from whom he derives one, that he should not enjoy both. (Story's Eq. Jur. Sec. 1,075.) Judge Story says if a testator should devise an estate belonging to his son, or heir at law, to a third person, and should in the same will bequeath to his son or heir at law a legacy of one hundred thousand dollars, or should make him the residuary devisee of all his estate, real and personal, it would be manifest that the testator intended that the son or heir should not take both to the exclusion of the other devisee; and therefore, he says, he ought to be put to his election which he would take; that is, either relinquish his own estate or the bequest under the will. (Story's Eq. Jur. 1,076.) In *Blake* v. *Bunbury*, 4 Bro. C. Cas. 24, it is declared to be the settled doctrine of a Court of equity that no person shall disappoint the will under which he takes, and that if the testator gives to B. lands to which he has no title, and which are the estate and in the possession of A., to whom he gives by the same will other parts of his estate, A. must elect and convey his estate to B., or he cannot take the ben-

efit under the will.   It seems to be the established doctrine of Courts of equity in such cases, that a person cannot accept the benefit intended for him and at the same time reject the will by asserting, in opposition to it, his own inconsistent proprietary rights.   The authorities are abundant sustaining this doctrine.  (Story's Eq. Jur. Chap. 30, and notes and authorities, and 1 Jarman on Wills, Chap. 15, and notes and authorities.)   In this connection let it be observed that we do not hold that acceptance by a wife of a devise or bequest from her husband would amount to an election to surrender her individual right in the common property, unless by a just construction of the will it appeared that it was the intention of the testator to make disposition of her share in the community property as well as of his own ; or unless, where such intention is not manifest, her acceptance of the benefit conferred by the will could not subsist consistently with the dispositions made by the testator ; for in the one case, if the testator's intention to affect her share of the common property by testamentary disposition be not apparent—or in the other, if her acceptance of his bounty be not repugnant to the provisions of the will, she might accept the donation without the surrender of her right to the half of the community estate.   (*Fuller* v. *Yates*, 8 Paige, 328 ; *Sanford* v. *Jackson*, 10 Paige, 266 ; *Bull* v. *Church*, 5 Hill, 207 ; S. C. 2 Den. 430.)

The appellant's counsel insists that the testator could not dispose of his wife's interest in the common property by his last will and testament.   He maintains that she could accept the donation made to her by the testator, and at the same time have and hold the half of the common property, notwithstanding the testator's disposition.   To support his position the learned counsel relies on the cases *Beard* v. *Knox*, 5 Cal. 252, and *Payne* v. *Payne*, 18 Cal. 291.   In the first of these cases the testator bequeathed to his wife five hundred dollars ; and the residue of his estate, except some trifling legacies, he devised to his infant daughter.   The plaintiff, widow of the testator, accepted the legacy, and at the same time claimed one half of the common property, and brought her action to

recover it, and had judgment.   It was contended on the part of the defendant that by accepting the legacy the widow was estopped from setting up a claim to half the common estate. But the Court held otherwise, saying:  " The deceased had no authority to dispose of but one half of the property.   This he might do to whomsoever he pleased.   The plaintiff does not contest that right, but only seeks to withdraw her own property from the operation of a conveyance which, it is claimed, has despoiled her of it.   This she may do with the greatest propriety, as the legacy received by her was part of her husband's estate and not her own."   In *Payne* v. *Payne* the Court referred to the case of *Beard* v. *Knox*, saying:  " We have no doubt of its correctness; and we only affirm and follow it in holding as we do in the present case, that the plaintiff only took one undivided half of the common property in her own right, by virtue of the community existing between herself and husband ; and that the remaining half was subject to his testamentary disposition."   These cases do not disturb the doctrine of election as laid down in the authority to which we have above referred.   The acceptance of the legacy by the widow, in *Beard* v. *Knox*, was not inconsistent with her claim to one half of the common property.   From the record of that case, now on file in the office of the Clerk of this Court, it appears that the testator did not undertake to devise to his daughter anything more than his own interest and estate in the common property.

A testamentary provision in lieu of a devisee's or legatee's proprietary right, in order to render it such upon acceptance of it, must be declared in terms to be given in lieu of such right; or that intention must be deduced by clear and manifest implication from the will, founded upon the fact that the claim to such proprietary right would be inconsistent with the will or so repugnant to its dispositions as to disturb and defeat them. (4 Kent's Com. 58 ; *Fuller* v. *Yates*, 8 Paige, 330.)  In *Payne* v. *Payne* the doctrine of election was in no sense involved, and the Court did not say anything touching the point now in controversy.

The case of *Theall* v. *Theall*, 7 La. R. 226, cited by appellant, sustains the doctrine that a wife entitled to half the *gananciales*, may accept a bequest under the will of her husband without thereby surrendering her proprietary right to half the community property. In that case the testator, after making several specific legacies to his collateral relatives, bequeathed to his wife certain designated personal property, and then gave of the remainder of his property one half to his wife and the other half to other persons. Mrs. Theall claimed that she was entitled to the specific legacy made to her, and to one half of the residue of her husband's property after payment of the specific legacies under the will, and also to one half of the community property in her own right; and the Court held that she was so entitled, on the ground that such was the testator's intention ascertained by reference to the language of his will. In the case here referred to the Court say a testator must be presumed to know that his own property only can be the subject of his disposition, and that he cannot dispose of the property of others. The case of Theall is in our judgment in consonance with other authorities which we have cited. Her acceptance of the specific and general bequests made to her was in no sense repugnant to the provisions of the will. The will in all its provisions could have complete effect, notwithstanding, and that too according to the apparent intent of the testator. The intention of the testator is to be kept in view as the pole star in the construction or interpretation of his will; and it is not to be presumed in the absence of a manifest intent on his part, that he designed to make disposition of any property not his own. But when it does so appear, and the owner of such property accepts a legacy or devise under the will, which acceptance necessarily operates to give effect to the will as an entire disposition by the testator, such acceptance must, by the conditions on which it is founded, be held to be a confirmation of the dispositions of the will. This results logically from the conditions involved, forbidding and rendering impracticable the contemporaneous assertion of claims, which cannot consist together in

support of the will. (*Gretton* v. *Haward*, 1 Swanst. 420—430, and the learned note of Swanston; *Sanford* v. *Jackson*, 10 Paige, 270.)

While it is the law that a testator can only dispose of his own property, he may assume to dispose of that which belongs to another, and such disposition may be ratified and confirmed by its owner, by the acceptance, under the will, of a donation, necessarily implying such ratification and confirmation. The act of the testator attempting to dispose of the property of another, and the act of the owner of such property in accepting the benefit provided for him by the testator, united, complete the disposition, which, without the act of confirmation, would be of no effect. That the testator attempted to deal with the Blucher Rancho as his own property, is evident from the language of his will in respect to it. He uses the language of a sole proprietor, as it would seem, *ex industria.* He speaks of it as " *my* Blucher Rancho " not less than five times in his will.

The widow having accepted the devises and bequests provided for her by the will, thereby made her election and confirmed the disposition made by her husband of the common property; because to hold otherwise would so far frustrate and disappoint the objects and intentions of the testator as to deprive his children by his former marriage, and their children, in a great measure, if not entirely, of the portion of the property which he evidently designed they should have.

In the tenth clause of the will the testator declared his intention to dispose of the three leagues of the Blucher Ranch, not specifically devised, or so much thereof as might be necessary for the purpose of raising means for the payment of debts and liabilities subsisting against him; but anticipating that he might not accomplish this object during his life, he directed his executrix and executors, in that event, to carry into effect his design. He thus appointed and charged these three leagues of land for the especial purpose of paying, not only the debt secured by mortgage on the Blucher Rancho, but also that secured by mortgage on the Bodega property, as

well as all other debts which he might owe at the time of his death; and also the expenses of his funeral and of the settlement of his estate. By this means he provided to relieve the Bodega property, which he gave to his wife and her children, of the encumbrance upon it; and further provided that of the proceeds of the sale of the three leagues appropriated for the payment of his debts which might thereafter remain, his wife should have one third and his children living at the time of his death the other two thirds. That the testator intended the entire Blucher Rancho should be devoted to the objects expressed in his will, we think there can be no rational doubt.

### *Deed by an attorney in fact must be signed with principal's name.*

The deed executed by Stephen Henry Smith to Polhemus was not the deed of Stephen Smith. Stephen Henry Smith signed it with the description "Attorney in fact of Stephen Smith," appended to his name. This was not an execution of the deed in the name of his constituent and therefore was not, even if the transaction was honest and fair in its inception and attempted consummation, effectual to transfer the property therein described. So that notwithstanding this deed, the Blucher Rancho was the property of Stephen Smith and his wife on the day of his death. The added words: "Attorney in fact of Stephen Smith," are *descriptio personæ* merely of him who signed the deed. The fact that Stephen Henry Smith was the attorney of the person described in the deed as the grantor, and that he intended to bind his principal thereby, does not obviate the objection. It may be admitted that the attorney intended to bind his principal by the deed executed —but intention alone was not enough. The use of legal means for accomplishing the object were essential and indispensable to effect the transfer of the property. The rule is well established that when a person having power to sell and convey real estate for another, undertakes to exercise the power, the act performed must be in the name of the principal, or it will not bind him. (*Elwell* v. *Shaw*, 16 Mass. 42;

*Townsend* v. *Corning*, 23 Wend. 439, and the cases therein cited.)

*Right of one who believes himself a trustee to be reimbursed for advances made to trust estate.*

The appellant supposed that he had acquired the title to the Blucher Rancho by means of the deeds executed by Stephen Henry Smith and Polhemus, and that he held the title so far as the plaintiffs were concerned, in trust for them, and he claims that whatever he did in the premises subsequent to that time, was in discharge of his duties as trustee to the extent of the interests of the plaintiffs and all others concerned in the property as beneficiaries under the will of Stephen Smith.   He accordingly paid the sums due and secured by the two mortgages mentioned, and adopted means for the preservation of the property and for securing the confirmation of the title.   For these advancements the decree of the Court below justly provides he shall be paid.

By the decree of foreclosure of the mortgage on the Blucher Rancho and the sale of the premises thereunder and the conveyance finally executed to the appellant, he became invested with the legal title to the property.   Before then, on the 4th of December, 1856, Manuella T. Smith had by deed remised, released and forever discharged the appellant, and Polhemus, and Stephen Henry Smith, of and from all actions, causes of action, claim, interest, right or demand which she individually or as executrix could or might legally or equitably have, of, in, and to the Blucher Rancho, and every part and parcel thereof; and also of and from all actions and causes of action which she individually or as executrix or otherwise should or might have against them by reason of any deed, matter or thing whatsoever connected with the Blucher Rancho, or in any way affecting the title to the same, as then vested and existing in them, or either of them.

It is not claimed that the relation of trustee and *cestui que trust* subsisted between the appellant and Mrs. Smith after the

execution of this deed of release, if in fact it existed before then. In consideration of the covenant on the part of Bowman to pay the debts of the estate and to indemnify it and herself against liabilities, she seems to have been willing to release and surrender her rights and interests therein, and undertook to do so by the deed of release of December, 1856. This release, we think, had the effect to transfer to Bowman, Polhemus, and Stephen Henry Smith her residuary interest in and share of the three leagues of land appointed for the payment of the testator's debts and liabilities, as specified or indicated in the tenth clause of the will. This deed of release could not operate to divest the rights of the children of Stephen Smith to the two thirds of the residuum of these three leagues of land, but it operated to transfer to Bowman, Polhemus, and Stephen Henry Smith the interest of the person who executed it in the contingent surplus of the proceeds which might arise from the sale of the three leagues appointed and appropriated for the payment and discharge of debts and liabilities. We see no reason for setting aside the decree of foreclosure of the mortgage on the Blucher Rancho, nor the sale and conveyance made by virtue thereof, which became consummate in the transfer of the title of the persons who were defendants in that action, to the appellant, who by reason of the circumstances and of his own election and that of the parties interested under the will, had become and thus remained their trustee, holding the legal title to the property for their benefit; nor do we discover any reason for declaring null and void the bond executed by Bowman and the compromise entered into and the release executed by Mrs. Smith. She does not ask to have the same so declared and decreed, and it was not the duty of the Court to extend to her a real or supposed benefit that she manifested no desire to obtain.

Neither party has objected to the account as taken and stated, nor to the mode of making up any deficiency that might possibly remain to be paid to Bowman after exhausting the residue of the three appointed leagues for the purposes designated by the tenth clause of the will. By the account

stated, Bowman made sales of portions of the Blucher Rancho, amounting to two thousand four hundred and sixty-three and a half acres, for which he is charged in the account with thirty-one thousand one hundred and thirty-seven dollars and seventy-three cents. These sales were properly allowed by the Court below to stand as valid.

The appellant objects to the rate of interest—ten per cent per annum—allowed to him on the principal sums due him, for advancements made in discharge of debts in his capacity of trustee, and otherwise for the payment of moneys necessarily expended by him for the protection and preservation of the estate. He claims that such rate of interest will not indemnify him for his outlay, and insists that he is entitled in equity to a higher rate of interest, and that it is competent for the Court to afford him indemnity in this particular. Under the circumstances of the case we are not disposed to change the decree of the District Court in this respect. It is highly probable he will be well compensated for all advancements made by him in the performance of his voluntarily assumed trust. If the remaining portion of the three appointed leagues bring upon sale as much in proportion as did the land already sold by him, there will be a surplus remaining after he shall have been paid as provided by the decree in this case, and of that surplus he will be entitled in his own right to one third, while the children of the testator will be entitled to the other two thirds of it.

Having thus ascertained and determined the rights of the respective parties, it is now adjudged and decreed that so much of the judgment and decree of the Court below entered on the 19th day of October, 1860, as holds, adjudges and decrees that the agreement entered into on the 7th of August, 1856, between Manuella T. Smith, executrix of the last will and testament of Stephen Smith, deceased, and the defendant Bowman, and the bond executed on the same day by said Bowman to the said Manuella T. Smith, executrix, etc., to be null and void, and of no effect, be and the same is hereby reversed.

And it is further adjudged and decreed that so much of the said judgment and decree of the Court below as holds, adjudges and decrees that the release executed on the 4th of December, 1856, by Manuella T. Smith, in her own right and also as executrix, etc., to said Bowman, Polhemus, and Stephen Henry Smith, to be null and void and of no effect, be and the same is hereby reversed.

And it is further adjudged and decreed that so much of said judgment and decree of the Court below as holds, adjudges and decrees that the deed executed on the 10th day of June, 1857, to said Bowman under the decree of foreclosure of the mortgage on the Blucher Rancho, and of the sale of said rancho, to be null and void and of no effect, be and the same is hereby reversed.

And it is further adjudged and decreed that as to the parts and portions of said judgment and decree entered on the 19th day of October, 1860, not reversed as above specified, be and the same is hereby affirmed.

And it is further adjudged and decreed that the judgment and decree of the Court below, made and entered on the 26th of December, 1863, be set aside, except as to the confirmation of the report of the referee, and in lieu thereof, that a judgment and decree be drawn up by the attorneys for the parties and submitted to this Court, that the same may be settled as the judgment and decree to be entered in this action, at which time the judgment respecting costs will also be entered.

[NOTE.—The opinion in this case was delivered at the April term, 1865. The parties concerned subsequently settled the matters in controversy between them, and hence the judgment in form directed to be drawn up and submitted to the Court was not prepared.]