[No. 10410. Department One. August 14, 1912.]

ELEANOR HERRICK et al., *Appellants*, v. EVA J. MILLER et al., *Respondents.*[1]

WILLS—CONSTRUCTION—INTENT—COMMUNITY PROPERTY—ELECTION BY WIDOW—PROPERTY DEVISED—PRESUMPTION. A will devising all of the testator's real estate, "and all interest therein, community or otherwise" of which he dies seized or to which he shall have the power of disposition by will, in trust to pay the net income to his wife during life or widowhood, does not show any intent to.devise the wife's half of the community property, and hence does not put her to an election between her community interest and the provision made for her in the will; in view of the rule that the necessity for an election must appear upon the face of the will itself, and the presumption that the testator intended to dispose of his own property only, in the absence of any designation of specific property (CHADWICK, J., dissenting).

WILLS—CONSTRUCTION—EXTRINSIC EVIDENCE—ELECTION. For the purpose of forcing an election, extrinsic evidence is not admissible to establish the intent to dispose of property over which the testator had no testamentary power of disposition.

WILLS—ELECTION—EVIDENCE—MATERIALITY. Where a widow was not required by a will to make an election between her community interest and the provision made for her in the will, it is immaterial whether her acts in dealing with the estate would have amounted to an election if the will had required it.

FRAUDS, STATUTE OF—CONVEYANCE OF COMMUNITY PROPERTY—ORAL AGREEMENT. An oral agreement by a widow to allow her community interest in real estate to go under her husband's will cannot be shown to divest her of her community interest, the statute requiring such conveyance to be by deed.

APPEAL—REVIEW—PARTIES ENTITLED TO ALLEGE ERROR. One seeking, by an alternative prayer in the complaint, a partition of interests in a will contest, cannot allege error in the separation of interests in that the will contemplated the management of the property as a whole.

Appeal from a judgment of the superior court for King county, Myers, J., entered January 2, 1912, upon findings in favor of the defendants, after a trial on the merits before

[1]Reported in 125 Pac. 974.

the court without a jury, in an action to obtain the construction of a will. Affirmed.

*Tucker & Hyland,* for appellants.
*Bo Sweeney,* for respondents.

PARKER, J.—The parties to this action are the children and widow of Dr. P. B. M. Miller, deceased, late of Seattle. The purpose of the action is to obtain a construction of his will and a settlement of all of the property rights of the parties under the will. Dr. Miller died on December 3, 1904, leaving the will here involved, which he had made a few months previous. The only provisions of the will which we need notice in our present inquiry are the following:

"(3) I bequeath to my son, Hubert Livingston Miller, my gold watch and chain, all my medical library, surgical instruments and general surgical equipment of every nature whatsoever.

"(4) I bequeath all the residue of my personal property and effects of every nature whatever, including my separate personal property and my interest in community personal property wheresoever situated, after the payment of my debts, funeral and testamentary expenses as hereinbefore provided, unto my wife, Eva J. Miller, absolutely.

"(5) I give and devise all my real estate of every tenure whatsoever and wheresoever situated, and all interests therein, community and otherwise, of which I shall at my death be seized or entitled to, or of which I shall at my death have power to dispose of by will, unto my wife, Eva J. Miller, and my son, George E. Miller, my executors hereinafter named, and to the survivor of them, and their successors, in trust, to be held by them for the purposes and subject to the provisions hereinafter declared.

"(6) I declare it to be my earnest request and recommendation that, under no circumstances, shall any part of my real property be sold during the lifetime of my said wife, provided, she shall so long continue my widow; but that said property shall be rented and leased as may seem best to my executors and trustees and their successors; and I direct that the net income therefrom shall be paid to my said wife dur-

ing her widowhood and become her absolute property and she shall not be liable to account for any income so paid to or received by her.

"(7)   I direct that, after the death or future marriage of my said wife, her successor in the trust and the said George E. Miller or his successor in the trust shall, as soon as practicable thereafter, sell all of my real estate and interests therein hereinbefore devised in trust and convert the same into money, and shall for the purposes aforesaid execute and deliver all such deeds and conveyances as may be necessary to pass the proper title thereto:—and I direct that the money so received from such sale or sales, together with the income received from said real property from and after the death or re-marriage of my said wife, shall be distributed equally, share and share alike, among my children,  .  .  ."

The will appoints Eva J. Miller and George E. Miller, widow and son of the testator, executrix and executor without bonds, and directs the settlement and management of the estate without the intervention of the court, except to admit the will to probate and file an inventory as required by law. Accordingly, in January, 1905, the will was admitted to probate, and an inventory filed by the executor and executrix. All of the property left by Dr. Miller was his interest in the community property of himself and wife, Eva J. Miller. That community property consisted of lot 1 and the north 15 feet of lot 4 in block 48, Terry's addition to Seattle, which was appraised at $35,000, and personal property consisting of surgical instruments, medical library, office furniture, and household furniture which was appraised at $850. The community real property above described, at the time of the death of Dr. Miller, consisted of a tract of land fronting 75 feet upon the east side of Sixth avenue and 120 feet upon the south side of Marion street, being at the southeast corner of the intersection of that avenue and street in Seattle, together with a hotel building situated upon the westerly portion of the tract, and also a foundation situated upon the easterly portion of the tract upon which they were then contemplating the erection of another building.   This property

is referred to as the "Ross-shire," that being the name they gave to the hotel building thereon. The management of this property appears to have been left largely if not wholly to Mrs. Miller after the death of Dr. Miller. She had separate funds of her own with which she thereafter erected upon the fundation on the easterly portion of the tract a building at a cost of approximately $12,000. This building and the other one upon the westerly portion of the tract were rented together as a hotel. In May, 1911, in a condemnation proceeding prosecuted by the city of Seattle to acquire the right to damage the Ross-shire property by changing the grade of Sixth avenue, there was awarded to the owners of that property the sum of $12,000 damages, which was accordingly paid into court by the city. The claim of Mrs. Miller to one-half of this money as belonging to her absolutely, and that only one-half thereof belonged to the trust estate, gave rise to this controversy, and resulted in the bringing of this action in June, 1911, by certain of the residuary devisees to settle the property rights of all parties under the will.

The substance of the prayer of plaintiffs' complaint is that the will be so construed as to give to Mrs. Miller only the net income from the Ross-shire property and the $12,000 awarded as damages to that property in the condemnation case, reserving the whole thereof to go to the residuary devisees upon the death or remarriage of Mrs. Miller. The theory of this claim of the plaintiffs is that Dr. Miller devised the whole of the Ross-shire property as if it were his separate property; that Mrs. Miller was thereby required to elect between her right to her community interest in that property and her right to the income from the whole thereof under the will, and that she has elected to take under the will and thereby waived her right to assert her community interest. The plaintiffs also prayed in the alternative that in the event the court should decree that they are not entitled to the construction of the will claimed by them, the respective interests of Mrs. Miller and the residuary devisees be finally

determined, and that the community interest of Mrs. Miller, if she be decreed to have any such interest, be set apart to her.

The trial court decreed, in substance, that the plaintiffs were not entitled to the construction of the will claimed by them; that Mrs. Miller was not required to elect between her community interest and her rights under the terms of the will; that she is the absolute owner, by virtue of her community right, of an undivided one-half interest in the Ross-shire property, exclusive of the building she erected thereon with her separate funds, and that she is the owner of that building. The court also partitioned the Ross-shire property, with the aid of commissioners appointed for that purpose, between Mrs. Miller and the trust estate, awarding to her the easterly seventy feet on which her building is situated, and to the trust estate the westerly fifty feet together with the building thereon. The court also awarded the $12,000, one-half to Mrs. Miller and one-half to the trust estate, providing, however, that there should be first paid therefrom a mortgage upon the Ross-shire property for $3,600, which had been given to raise funds to pay a community debt incurred by Dr. Miller in his lifetime. From this determination of the rights of the parties, the plaintiffs have appealed.

The controlling question in this case is, Was Mrs. Miller required to elect between her community interest in the Ross-shire property and her right to the net income from the whole thereof, which it is claimed by counsel for appellants was devised to her by the terms of the will? In other words, is the devise made to her by the will so inconsistent with her claim of community interest in the property that equity will not permit her to assert both claims? Learned counsel for appellants contend that such rights of Mrs. Miller are so inconsistent that she cannot successfully maintain both, but must choose which one she will exercise, and abandon the other. This contention is rested upon the general rule that when the owner of an estate, in an instrument of donation,

either will or deed, uses language with reference to the property of another, which, if that property were his own, would amount to an effectual disposition of it to a third person, and by the same instrument gives a portion of his own estate to that same owner whose rights of ownership he had thus assumed to transfer, such owner and donee is put to an election between his claim of title to the property so assumed to be disposed of by the donor, and his right as donee under the instrument.

Before looking to the particular language of the will, let us notice some of the rules of law applicable to the construction of such instruments when a question of election is involved. In 1 Pomeroy, Equity Jurisprudence (3d ed.), at § 472, that learned author says:

"The first and fundamental rule, of which all the others are little more than corollaries, is: In order to create the necessity for an election, there must appear upon the face of the will itself, or of the other instrument of donation, a clear, unmistakable intention, on the part of the testator or other donor, to dispose of property which is in fact not his own. This intention to dispose of property which in fact belongs to another, and is not within the donor's power of disposition, must appear from language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation. It is the settled rule that no case for an election arises unless the gift to one beneficiary is irreconcilable with an estate, interest, or right which another donee is called upon to relinquish; if both gifts can, upon any interpretation of which the language is reasonably susceptible, stand together, then an election is unnecessary."

A strong presumption, necessary to overcome in order to require an election on the part of the donee under such circumstances, is that the testator is presumed to intend only to dispose of property over which he has testamentary power of disposition. The authorities hereafter noticed show that this presumption will always prevail unless the testator's in-

tention is clearly expressed or necessarily implied to the contrary by the terms of the will itself. We think there is no dissent from this rule. We will also find as we proceed that such an intention on the part of the testator must be evidenced by designating with certainty the specific property he so assumes to dispose of, in order to put his donee to an election. The simplest case requiring an election is where a testator assumes to dispose of property of his devisee and designates the property he so assumes to dispose of by description such as would be sufficient in an ordinary conveyance. In such a case it is easy to see that the devisee is put to an election, because there is then no uncertainty as to the testator's intention to dispose of property belonging to his devisee. In this case, however, we have no such specific designation of the property of the devisee which it is claimed the testator assumed to dispose of as his own, and besides we are dealing with property which belonged equally to both the testator and the devisee. Such cases give rise to more difficulty in the determination of a question of election. The Ross-shire property being the community property of Dr. and Mrs. Miller, under our laws he had no power of disposition of that property by conveyance during his lifetime, except by deed joined in by Mrs. Miller (Rem. & Bal. Code, § 5918); nor did he possess any testamentary power of disposition thereof except as to his community interest therein alone, that being only an undivided one-half interest. Rem. & Bal. Code, § 1342. If we assume that this is simply a case of two persons owning undivided interests in property, apart from the analogy sometimes sought to be drawn by the courts between dower and community property rights of a wife, we find the following observations of Professor Pomeroy applicable here:

"If a testator owning an undivided share uses language of description and donation which may apply to and include the whole property, and by the same will gives benefits to his co-owner, the question arises whether such co-owner is bound

to elect between the benefits conferred by the will and his own share of the property. *Prima facie* a testator is presumed to have intended to bequeath that alone which he owned,— that only over which his power of disposal extended. Wherever, therefore, the testator does not give the whole property *specifically*, but employs *general words* of description and donation, such as 'all my lands,' and the like, it is well settled that no case for an election arises, because there is an interest belonging to the testator to which the disposing language can apply, and the *prima facie* presumption as to his intent will control. On the other hand, if the testator devises the property *specifically* by language indicating a specific gift of the property, an election becomes necessary." 1 Pomeroy, Equity Jurisprudence (3d ed.), § 489.

If we assume that dower and community property rights of a wife are analogous rights, then it would seem that there must be an equally clear expression of an intention on the part of the husband in his will to put her to an election, because a gift to a wife by will, in jurisdictions where dower rights exist, in the absence of statute prescribing a different rule, is presumed to be intended as a provision in addition to her dower right, unless the language of the will clearly expresses or necessarily implies that such gift to her is in lieu of dower. 1 Pomeroy, Equity Jurisprudence (3d ed.), § 493. At § 505, referring to the question of election by a wife between community rights and her rights under the will of her husband, the author further observed:

"Whenever a husband has made some testamentary provision for his wife, and has also assumed to dispose of more than his own half of the community property, in order that she shall be put to her election, the testamentary provision in her behalf must either be declared in express terms to be given to her in lieu of her own proprietary right and interest in the community property, or else an intention on his part that it shall be in lieu of such proprietary right must be deduced by clear and manifest implication from the will, founded upon the fact that the claim to her share of the community property would be inconsistent with the will, or so repugnant to its dispositions as to disturb and defeat them.

An intent of the husband to dispose of his wife's share of the community property by his will, and thus to put her to an election, will not be readily inferred, and will never be inferred where the words of the gift may have their fair and natural import by applying them only to the one-half of the community property which he has the power to dispose of by will."

Having in mind these rules of construction, what does the language of this will tell us as to the intention of Dr. Miller to dispose of his wife's interest in their community property?

The only language of the will which can possibly be construed as expressing an intention on the part of Dr. Miller to dispose of Mrs. Miller's community interest in the Ross-shire property is the following: "I give and devise all my real estate of every tenure whatsoever and wheresoever situated, and all interest therein, community and otherwise, of which I shall at my death be seized or entitled to, or to which I shall at my death have power to dispose of by will, unto my wife Eva J. Miller and my son George E. Miller . . . in trust," etc.; Mrs. Miller being the sole beneficiary of that trust during her life or until she again marries. No specific property is designated or described in any manner, and the language apparently expressly limits his testamentary disposition to property which he shall at the time of his death "*be seized or entitled to*" or "*have power to dispose of by will.*" In view of the fact that he is not seized of or entitled to the wife's community property, has no power of disposition thereof during her lifetime, nor any power of testamentary disposition thereof, it seems to us that there is but little room for arguing that this language is even ambiguous as to whose property he assumed to dispose of. Standing alone and applying thereto the rules of construction we have noticed, it seems to us that the language does not express an intention on the part of Dr. Miller to dispose of his wife's community interest. In any event such an intent is not expressed with such clearness as the law requires in order to put her to an election. In the case of *Estate of Gilmore*, 81

Cal. 240, 22 Pac. 655, dealing with the provisions of a will disposing of property in language no more specific than this, the court said:

"It will be observed that the will does not specifically describe any property, but simply gives to the wife 'one-half of all my property, both real and personal, of which I shall be possessed at the time of my death.'

"Conceding that the will is susceptible of two possible constructions,—one, that the testator intended to devise all property of which he should be possessed at the last moment of life, including the whole of the community property over which he had the power of disposition during life; and the other, that he intended to devise only his property then in his possession, over which alone he had the power of *testamentary* disposition,—still, well-settled rules of construction and presumptions of law require the adoption of the latter construction, which accords with the decree of the lower court.

"(1) The testator must be presumed to have known the law applicable to the disposition of property by will, and therefore to have known that he had no power to dispose, by will, of his wife's interest in the community property, but only of his own interest therein. (Civ. Code, §§ 172, 1331, 1402; *Morrison v. Bowman*, 29 Cal. 347; *Estate of Frey*, 52 Cal. 660.)

"(2) He must also be presumed not to have intended to devise any property over which he had no power of testamentary disposition, and therefore the will should be read as applying only to his property within such power. (*King v. Lagrange*, 50 Cal. 332; *Estate of Silvey*, 42 Cal. 212.) In the latter case it was said: 'The devise must be read as applying only to that moiety which was within his testamentary power. A purpose to attempt the disposition, by will, of property which by statute would pass to the wife, as survivor of the matrimonial community upon his death, is not to be readily inferred especially where, as here, the words employed by the testator may have their fair and natural import by applying them only to that moiety of which he had, by law, the testamentary disposition.'

"The devise in this case is, 'of all my property of which I may die possessed,' and not of any specific property. The devise to the wife is not inconsistent with the other devises to

the daughter and grandchildren. All the 'words employed by the testator may have their fair and natural import by applying them only to that moiety of which he had, by law, the testamentary disposition'; and there is nothing in the circumstances under which the will was made substantially tending to rebut the presumptions above stated. It is only where there is such a clear manifestation of intent to devise the whole community property as to overcome those presumptions that the wife can be put to her election either to take under the will, or to take what she is entitled to by law. (*Morrison v. Bowman,* 29 Cal. 347; *Noe v. Splivalo,* 54 Cal. 207; *Estate of Stewart,* 74 Cal. 98.) But where there is no such manifest intent, the wife may claim and take both what the law gives her in the community property, and also what is given her by the will of her husband in that portion thereof subject to his testamentary disposition. (*Beard v. Knox,* 5 Cal. 252, 63 Am. Dec. 125; *Payne v. Payne,* 18 Cal. 301; *Estate of Silvey,* 44 Cal. 210; *King v. Lagrange,* 50 Cal. 331; *Estate of Frey,* 52 Cal. 658.)"

In the case of *In re Wickersham's Estate,* 138 Cal. 355, 70 Pac. 1076, 71 Pac. 437, the court held that a similar provision of a husband's will did not require the wife to elect between her community rights and her rights under the will, and further that, notwithstanding she there expressly elected, by a signed written instrument under the belief that she was required to elect, the written instrument of election not being intended as a conveyance to the other legatees, such election amounted to nothing as affecting her rights, and that she thereafter could claim both under the will and her half of the community property. These California cases are of special interest and force in this case, in view of the fact that, under the laws of California, the husband has the absolute power of disposition of the community property by deed without the wife joining therein, during his lifetime. We have seen that he has no such power under the laws of the state of Washington. In the earlier California case of *Estate of Stewart,* 74 Cal. 98, 15 Pac. 445, the court was evidently largely influenced by the fact that the husband had power to dispose of

the whole of the community property during his lifetime, as indicated by its remarks at page 103 as follows:

. "When read together, the provisions of the will are the best expression—short of a direct statement to that effect—that he was dealing with the whole of the community property under the phrase 'all my estate.' Every clause in the will bears a clear and indisputable badge of that intention. He dealt with the property just as he had been accustomed to deal with it through a long, active, and successful business life; just as he had in accumulating and disposing of the property during his lifetime,—without consulting his wife, or asking her to join with him in any conveyance. He uses the phrase 'my estate' in the sense that he had been accustomed to use it all his life. It *was* his estate. He could dispose of it absolutely without the consent of his wife during his life, and he thought undoubtedly that he could do so, and that he was doing so, by his will."

The result of that case seems to be not in entire harmony with the later California cases we have above noticed; but it is worthy of note that the case was decided by a majority of one only, three of the judges dissenting. We are of the opinion that Mrs. Miller was not required to elect between her community rights and her right to take under the provisions of the will. This view finds support in *Moss v. Helsley*, 60 Tex. 426; *Pratt v. Douglas*, 38 N. J. Eq. 516; *In re Gwin's Estate*, 77 Cal. 313, 19 Pac. 527.

It is contended that the trial court erred in excluding oral evidence offered to show a conversation had between Mrs. Miller, the son George E. Miller, one of the appellants, and Dr. Miller prior to his death. The purpose of this evidence was to show the intention of Dr. Miller to dispose of all of the community property, including Mrs. Miller's portion, by the terms of his will, and was offered upon the assumption that the language of the will was so ambiguous as to warrant the introduction of such evidence in explanation of its meaning. The authorities seem practically harmonious in holding that for the purpose of forcing an election, extrinsic evidence is not admissible to establish the intention of the testa-

tor to dispose of property over which he has no testamentary power of disposition. This is apparently the rule, even though the language of the will is ambiguous, whatever may be the rule as to the admissibility of evidence to explain its ambiguity in other respects. The strength of the presumption against an intention of a testator to dispose of property which is not his own is so strong that the law will not permit any such intention to be shown by oral evidence, but such intention must appear from the language of the will alone. In *Miller v. Springer*, 70 Pa. St. 269, Justice Sharswood, speaking for the court, said:

"The will of Rachel Skiles, on its face, raised no case of election. It did not assume to devise the property in question as her own, although her title to it, if she had any, certainly did pass by general words. It is well settled, and accords with the reason and principle of the thing, that if the language of the will admit of being restricted to property belonging to or disposable by the testator, the inference will be that he did not intend them to apply to that over which he had no disposing power. A general devise of the testator's real estate has always been held to show an intention to give what strictly belongs to him, and nothing more, even if the testator had no real estate of his own upon which the devise could otherwise operate: 1 Jarman on Wills 393. Nor can evidence *dehors* the will be admitted to show that the testator considered the land in question to belong to him, and intended it to pass under the will."

Equally strong expression of the rule is found in *Jones v. Jones*, 33 Md. 155, in the language of Justice Frick as follows:

"The intention to raise an election must be clear and manifest from the will itself. That intention must be collected from the face of the instrument, and without a clear and express manifestation, it cannot be presumed to extend to property which did not otherwise pass under it. If the will is susceptible of a construction that does not require it, then, by reason of its imperfect execution here, it is not a case where the party can be put to his election as to the property in this state."

Probably as clear and comprehensive a statement of the doctrine as can be found is that made by Justice Mitchell in *Sherman v. Lewis*, 44 Minn. 107, 46 N. W. 318, as follows:

"The rule is that a general bequest and devise of the testator's property will be construed as intended to extend only to such property as he could dispose of by will. Also, that, even where specific property is disposed of by will, in which the testator had only a partial interest, the courts will, if possible under any reasonable rule of construction, construe the language of the will as intended to apply only to the interest which the testator was able to dispose of; the presumption being that he did not intend it to apply to that over which he had no disposing power. Also that, in order to raise a case for an election, the intention as manifested by the will itself must be clear and decisive. It must be clear, beyond reasonable doubt, that the testator has intentionally assumed to dispose of the property of the beneficiary, who is required on that account to give up his own gift. 1 Jarm. Wills (5th ed.) 452-454; 2 Redf. Wills, 745, 746; *Havens v. Sackett*, 15 N. Y. 365; *Washburn v. Van Steenwyk*, 32 Minn. 336, 352 (20 N. W. Rep. 324); *In re Gotzian*, 34 Minn. 159, 164 (24 N. W. Rep. 920). And while parol evidence is admissible, to the same extent as in other cases, in aid of the construction of written instruments,—that is, to show the condition of the subject-matter, and the surrounding circumstances, so far as to place the court in the position of the testator,—yet the intent of the testator to dispose of that which was not his must appear from the words of the will itself, and cannot be proved by evidence *dehors* the instrument."

See, also, *Havens v. Sackett*, 15 N. Y. 365; *Fitzhugh v. Hubbard*, 41 Ark. 64; *Stokes's Estate*, 61 Pa. St. 136; *Charch v. Charch*, 57 Ohio St. 561, 49 N. E. 408; *Young's Adm'r. v. McKinnie's Adm'r*, 5 Fla. 542; *McDonald v. Shaw*, 92 Ark. 15, 121 S. W. 935. See note to this case in 28 L. R. A. (N. S.) 657.

Our own decisions in *Reformed Presbyterian Church v. McMillan*, 31 Wash. 643, 72 Pac. 502, and *Rathjens v. Merrill*, 38 Wash. 442, 80 Pac. 754, are not in conflict with this view. Those were not election cases. Nor do we think our

decision in *Prince v. Prince*, 64 Wash. 552, 117 Pac. 255, holds differently, in view of the circumstances there involved. That was a case of mutual wills which amounted to a settlement of a contractual nature.

A considerable portion of the argument of learned counsel for appellants deals with the acts of Mrs. Miller in the management of the trust estate, which it is claimed amounted to an election on her part to claim under the will. Since we have concluded that she was not required to elect by the terms of the will, we regard it as immaterial as to whether or not such acts would have amounted to an election. *In re Gwin's Estate*, 77 Cal. 313, 19 Pac. 527; *In re Wickersham's Estate*, 138 Cal. 355, 70 Pac. 1076, 71 Pac. 437. Her acts in no event amounted to a conveyance of her community rights to the residuary devisees, nor did her acts mislead or cause the residuary legatees to act to their prejudice so as to raise an estoppel against Mrs. Miller claiming her community interest.

Counsel for appellants also rely to a considerable extent upon evidence which they claim tends to show an agreement and understanding between Mrs. Miller and the residuary devisees to the effect that she would keep all of the property together and let it all go to them at her death as if she were required to and had elected under the will. It is not only argued that the evidence admitted shows such an agreement, but also that the trial court erroneously excluded other evidence offered to that end. In any event we have nothing to support such a contention but oral evidence, either received by the court or offered and rejected by the court. To say that Mrs. Miller's community property could be lost to her by any such oral understanding would be equal to saying that she could convey her real property in that manner. Manifestly she cannot be divested of her community real property by mere word of mouth alone, however certain such an intention may have been expressed by her in that manner.

So far we have dealt with the language of the will as

though it contained nothing but the language of the devise made to the executor and executrix in trust for Mrs. Miller's benefit. There are other provisions in the will relating to the management of the property devised in trust, as will be noticed by reference to the provisions of the will above quoted, which may seem to indicate an intention that all of the Ross-shire property should be kept and managed together. Those provisions, however, even if construed as mandatory, go only to the question of the management of the property, and do not affect the question of where the title thereto shall ultimately rest. Manifestly no one is interested in this question except Mrs. Miller and the residuary devisees. It is true that all of the Ross-shire property will not necessarily be managed together if Mrs. Miller's portion be partitioned to her, though it may be so managed if she and her co-executor so desire, since she in any event is entitled to the entire net income therefrom. But these appellants are not in position to complain of a separation of these interests. They have in effect asked that very thing by the alternative prayer of their complaint. Whether or not Mrs. Miller would have the right to have the property partitioned and her interest set apart against the objections of the residuary devisees and thus give her the power to prevent the joint management, which it may be argued the will contemplates, is now of but little consequence in view of the manner in which the several rights of the parties are sought by appellants to be settled in this action. This is only a question of whether or not partition shall take place now between Mrs. Miller and the trust estate, or shall take place at her death or marriage. Appellants seeking this partition cannot complain that it seems in a measure to defeat the management of the trust estate as contemplated by the will.

Some contention is made upon the claimed necessity of Mrs. Miller accounting for rents and profits of the property during her management of the trust estate. This becomes of no consequence in view of the fact that in any event she is en-

titled to all of the net income, not only of her own community interest, but also of the trust estate during her life or until she marries. She has not wasted the property nor caused its depreciation in value in the least. Manifestly she has nothing to account for.

The partition of the property as made is apparently eminently just and fair, and the fact that it could be, and was, so partitioned as to give to her her own building without impairing the rights of the residuary legatees in the least, renders the question of their rights in that building, by reason of it having been built upon the common property by her, of no consequence. Had the building been placed there by her in such manner that a partition of the property could not have been fairly had by regarding the building as her separate property, Mrs. Miller might have been required to forego her claim of absolute ownership to the building.

We are of the opinion that the learned trial court has properly disposed of the rights of the parties, and that the judgment should be affirmed. It is so ordered.

DUNBAR, C. J., GOSE, and CROW, JJ., concur.

CHADWICK, J. (dissenting)—It is said in the majority opinion that, standing alone and applying thereto the rules of construction theretofore noticed, the language of the will does not express an intention on the part of Dr. Miller to dispose of his wife's community interest; or, if so, it is not expressed with such clearness as the law requires in order to put her to an election. It seems to me that the intent is sufficiently expressed. It is true, as asserted, that the husband cannot, as against the will of his spouse, devise more than his half, but he may so draw his will as to compel an election. There are many things about this will that make his intent sufficiently clear and certain to satisfy the tests of the law. He assumed and undertook to provide that the whole property should be kept intact during the widowhood

or pending the death of his wife. It is evident from the whole instrument that he intended that the whole property should eventually go to his children, and that, in lieu of her present interest in one-half of the property, his wife would take the income of the whole. When a testator gives property to one whom he would not be bound to recognize as a beneficiary, and the bequest depends upon a beneficial condition, an election must necessarily follow. Mrs. Miller was entitled to her half of the community property; or in lieu thereof, she might take the income of the whole. The effect of the majority holding is that she is entitled to her own and the whole income pending the determination of this litigation. The will states that the property is given in trust to the executors. The trust would be wholly ineffectual unless Mrs. Miller permitted her undivided share to rest in the trust and contented herself with the income of the whole property. While the case of *Prince v. Prince*, 64 Wash. 552, 117 Pac. 255, was based upon the principle of law governing mutual wills, yet is seems to me that the same principle would govern here, inasmuch as Mrs. Miller accepted the terms of the will and acted upon it for a sufficient time to bind her to an election.

For these reasons, I dissent from the majority opinion.