[Civil No. 3514. Filed April 22, 1935.]

[43 Pac. (2d) 1004.]

STANLEY T. PAYNE, Appellant, v. JOEL D. TODD, Executor of the Estate of EDWIN C. PAYNE, Deceased, EDWIN C. PAYNE, Jr., MORRIS W. PAYNE, HOWELL PAYNE and MARY RUTH TODD, Appellees.

Messrs. Norris & Patterson, Mr. W. E. Patterson and Mr. C. D. Ewing, for Appellant.

Messrs. Favour & Baker, for Appellee Joel Todd, Executor.

Mr. A. M. Crawford, for Appellees Edwin C. Payne, Jr., Morris W. Payne, Howell Payne and Mary Ruth Todd.

LOCKWOOD, C. J.—Edwin C. Payne, hereinafter called decedent, died on the 22d day of February, 1933, there surviving him five children and six grandchildren. He left estate consisting of real and personal property situated in Arizona and in Massachusetts, and a will which is the subject of this controversy. This will reads, omitting the formal matters, as follows:

"*First:* I direct that my just expense be paid.

"*Second:* I devise and bequeath unto my six grandchildren, to wit, four children of my son Edwin C. Payne, Jr.; Sherman R. Payne, son of Morris W. Payne; and Douglas Payne Todd, son of Mary Ruth Todd; share and share alike, the property situated in Massachusetts, known as the Thomas K. Payne Estate, and being the Eastham homestead; hereby devising and bequeathing to said six grandchildren, all my right, title and interest whatsoever, in and to said family homestead.

"*Third:* I devise and bequeath unto my daughter, Mary Ruth Todd, all of my right, title, interest and share in and to the premises and property on South Cortez Street, Prescott, Arizona, occupied as our home.

"*Fourth:* I release and forgive my son Stanley T. Payne, whether living at my death or not, the sum of approximately $3000.00 and interest which may be unpaid at the date of my death, or such part of said principal sum and interest as shall remain unpaid; the said sum being the amount loaned by me to my said son, it being my purpose to have the said debt cancelled, if it still exists at the time of my death, and this cancellation is made as a part of the share of my estate which might otherwise be bequeathed to him, and my said son will understand this arrangement.

"*Fifth:* I bequeath all of the shares of the Granite Dells Outing Association of which I die possessed, with the exception of one thousand shares, unto said association, to be turned into the Treasury thereof, provided that at the time of my death, the said Association, or its successor, shall be wholly owned, by stock interests or otherwise, by myself and my five children or their descendants. If the said Association be not so owned, then I direct that all of my shares, except the said one thousand shares, shall be and are hereby bequeathed in equal shares to my five children, to wit, to Edwin C. Payne, Jr., Morris W. Payne, Stanley T. Payne, Howell Payne, and Mary Ruth Todd.

"*Sixth:* I bequeath one thousand shares of the stock of the Granite Dells Outing Association, or of its successor in interest, unto my son Edwin C. Payne, Jr.

"*Seventh:* All the rest and residue of the property of which I die possessed, I bequeath and devise unto my said five children, to be distributed equally among them, share and share alike.

"It is my wish that if possible and necessary, the five shares of Arizona Power Company stock held by me be used to defray my expenses and the expenses of administration, and if there be further expenses of last sickness, or otherwise, that the same if possible be defrayed out of the proceeds of my note for $2000 loaned to the said Granite Dells Outing Association. It is, however, my desire that if the said Association at the time of my death be owned completely by the members of my family, that no hasty or immediate action be taken for the recovery of said money, but I give my Executor discretion to continue the said loan, and if said loan, or some part thereof be not used for necessary expenses, that the balance, at the discretion of the Executor, be eventually used for the purchase of stock in said Association for the benefit, equally, of my said five children.

"It is my desire that if any of my said five children shall die before my death, that his or her share shall go to his or her surviving child or chil-

dren, to be divided equally between said grandchildren.''

The will was duly probated, and on February 26, 1934, the executor filed his final account and petition for distribution. It was his contention that by the terms of the will distribution should be made as follows:

"To Mary Ruth Todd: All right, title and interest of decedent and of the estate in and to the home at No. 300 South Cortez Street, Prescott, Arizona, being parts of Lots 1, 3, 5, Bl. 26, City of Prescott, and a one fourth interest in the residue of money and personal property as shown in Schedule A.

"To Granite Dells Outing Association for its treasury, 3000 shares of stock of said Association.

"To Edwin C. Payne, 1000 shares of stock of Granite Dells Outing Association, and a one fourth interest in the residue of money and personal property as shown in Schedule A.

"To Morris W. Payne and to Howell Payne, each, a one fourth interest in the residue of money and personal property as shown in Schedule A.

"To Stanley Payne: All notes and indebtedness due to decedent, and the stock held as security therefor.''

Stanley T. Payne, hereinafter called appellant, claimed that distribution should be made in the following manner:

"To Mary Ruth Todd all right, title and interest of decedent and of the estate in and to lots 1, 3, 5, and 26, Cortez St., Prescott, Arizona, and a one-fifth interest in the residue of money and personal property in said estate.

"To Granite Dells Outing Association for its treasury three thousand shares of stock of said Association.

"To Edwin C. Payne, one thousand shares of stock of the Granite Dells Outing Association and a one-fifth interest in the residue of money and personal property in said estate.

"To Morris W. Payne and Howell Payne each a one-fifth interest in the residue of money and personal property in said estate.

"To Stanley T. Payne all notes or indebtedness due decedent and interest thereon which is unpaid, and a one-fifth interest in the residue of money and personal property of said estate."

The matter came before the court for hearing and appellant endeavored to introduce evidence showing what advancements had been made to the different children of deceased during his lifetime and the relations between the parties, on the ground that clause four of the will was ambiguous, and that he should be permitted to show the circumstances surrounding the testator at the time the will was made, in order to put the court in the position of the latter so that the will might be properly construed. Objection was made to this evidence and sustained by the court on the ground that there was no ambiguity which would warrant the introduction of such testimony. Appellant then made a general tender of evidence to show various advancements which testator had made to his different children prior to the making of the will in support of his contention that the distribution which he claimed proper under the terms of the will was in accord with its terms. The court declined to receive the testimony, stating that there was no ambiguity in the terms of the will requiring parol evidence to clear it up, and distribution was ordered in accordance with the prayer of the executor. From such order this appeal is taken.

It is admitted by all the parties that if the terms of a will are plain and unambiguous parol evidence is not admissible to contradict, vary or explain them. We consider first, then, whether the will is so plain in its terms that it cannot be reasonably said there is an ambiguity therein. Counsel for executor argue vehemently that they cannot see how any unpreju-

diced man can come to any other conclusion than that reached by the trial court. Counsel for appellant, on the other hand, insists with equal earnestness that it is clear from the terms of the will that their construction is the correct one. The very fact that there are two such diametrically opposed constructions made by counsel of high ability and irreproachable character would seem to indicate that there may perhaps be some slight doubt as to the real meaning of the will. Indeed, we must confess that the different members of this court upon reading the will and looking at it through the spectacles of opposing counsel were in considerable doubt as to just what the intention of the testator was. It will be seen that by the second, third, fifth and sixth clauses of the will specific bequests were made to the testator's grandchildren and children, the bequest in the fifth clause being a conditional one. It also appears by the seventh clause of the will that it was his intention that all of his children should participate, share and share alike, in any residue of his estate which was not specifically bequeathed.

The difficulty is with clause four. By its terms he specifically forgave to the appellant herein a debt which originally amounted to $3,000. He evidently contemplated that his son would make payments upon the debt, but that it might not be fully paid before his death. If clause four had stopped at the phrase ''if it still exists at the time of my death'' there can be no doubt that a forgiveness of the debt, *in addition* to participation in the residuary bequest, was intended by the testator. The difficulty arises over the construction of the remaining portion of the clause, which says that the cancellation is a part of appellant's share of testator's estate ''which might otherwise be bequeathed to him.'' It is the contention of the executor that these last words

are equivalent to "which has been bequeathed to him in clause seven of the will." It is the position of appellant that its meaning is "which would have been, but because of this clause has not been, bequeathed by this will." We are of the opinion that a plausible argument can be made, and indeed has been made in the briefs of the respective parties, in favor of each construction suggested. Such being the case, we must hold that clause four is ambiguous in its meaning when taken in connection with all the remainder of the will.

The question then is, is this ambiguity of such a nature that parol evidence is admitted, not to vary or contradict the terms of the will, but to explain the meaning of the testator when he used the words which he did? A good deal of time is devoted in the briefs to a discussion of the difference between a patent and a latent ambiguity and the rules applying thereto. The older decisions tend to hold that it is only latent ambiguities which may be explained by parol evidence. The more modern cases seem to take the view that any ambiguity which may be cleared up by a showing of the circumstances surrounding the testator at the time he made his will is susceptible of explanation by parol evidence. While we have never specifically determined which rule we will follow on this point in the construction of wills, we have done so where the ambiguity concerns an ordinary contract in the case of *Shannon Copper Co.* v. *Potter,* 13 Ariz. 245, 108 Pac. 486. We said:

"The rule, as stated by Lord Bacon, that parol evidence is inadmissible to explain a patent ambiguity, has generally been thought too broad, and, even where followed, has usually been limited in its application. The rule is, we think, correctly stated as follows: 'The true rule with regard to patent ambiguities must be taken to be this: The patent ambiguity which cannot be explained by

parol evidence is that which remains uncertain after the court has received evidence of the surrounding circumstances and collateral facts which are of such a nature as to throw light upon the intention of the parties. In other words, and more generally speaking, if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty, and the instrument is so far inoperative and void; and it cannot be sustained or rendered operative by the introduction of evidence which would necessarily have the effect of adding new terms to the writing.' 17 Cyc. 682, and see authorities there cited. There are many cases which entirely ignore the distinction and hold that a patent as well as a latent ambiguity may be explained by parol evidence. (Citing cases.) We think it entirely immaterial whether the ambiguity in the contract under consideration be patent or latent, as by the aid of extrinsic evidence the true intent of the parties can and has been made to clearly appear.''

And further, in the case of *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70:

'' 'While parol evidence is admissible, to the same extent as in other cases, in aid of the construction of written instruments—that is, to show the condition of the subject matter, and the surrounding circumstances, so far as to place the court in the position of the testator—yet the intent of the testator to dispose of that which was not his must appear from the words of the will itself, and cannot be proved by evidence *dehors* the instrument.' *Herrick* v. *Miller,* 69 Wash. 456, 125 Pac. 974. Such extrinsic evidence is admissible for the purpose of placing the court in the shoes of the donor, but such evidence can go no further. Pomeroy's Equity Jurisprudence, Sec. 473.''

We think, following the rules laid down in these two cases, that parol evidence is admissible for the

purpose of explaining either a patent or latent ambiguity in the will, but that it can only go to the extent of showing the circumstances surrounding the testator at the time he made the will, such as previous advancements to his children, his desire in regard to an equalization of bequests, the character and value of the property disposed of by the will, and similar matters.

The evidence which was offered by appellant was, we think, both relevant and material upon these points, and the trial court erred in not considering it.

For the foregoing reasons the order appealed from is set aside and the case remanded for further proceedings in accordance with the facts expressed herein.

McALISTER and ROSS, JJ., concur.