[No. 28624. Department One. September 9, 1942.]

TACOMA SAVINGS & LOAN ASSOCIATION, *Plaintiff*, v.
ETHEL L. MCCLINTOCK NADHAM (TOLOUSE) *et al.*,
*Appellants*, ARNOLD ELLWART, *as Ad-
ministrator, Respondent.*[1]

[1]Reported in 128 P. (2d) 982.

578

*Rex S. Roudebush* and *Wilkinson & Evans,* for appellants.

*Thomas R. Kimball* and *F. L. Stotler,* for respondent.

STEINERT, J.—Plaintiff, a savings and loan association, instituted an action of interpleader to determine the rights of conflicting claimants to the proceeds of a fund then in its possession. Shortly after the commencement of the action, plaintiff paid the amount of the fund into the registry of the court. The defend-

ant Arnold Ellwart, as administrator of the estate of Henry C. Burrow, filed an answer to plaintiff's petition, claiming that the fund belonged to that estate. The defendants Ethel L. McClintock Nadham (Tolouse) and Earl G. Tallmadge, her brother, step-children of Henry C. Burrow, filed an answer and cross-complaint claiming that the fund belonged to them as the heirs and legatees of Agnes Tallmadge Burrow, their mother, who at the time of her death was the wife of Henry C. Burrow, their step-father. The interpleader action thus developed into a contest between the administrator of the Henry C. Burrow estate and the heirs and legatees of Agnes Tallmadge Burrow, deceased.

After issues had been joined between the contesting claimants, the matter was tried before the court without a jury. Findings were made, from which the trial court concluded that the defendant administrator was entitled to the fund. Judgment was thereupon entered awarding the fund to him and dismissing the cross-complaint of the defendants claiming as heirs and legatees of Agnes Tallmadge Burrow, deceased. From that judgment, the latter claimants have appealed.

In 1912, Henry C. Burrow, a bachelor, married Agnes T. Tallmadge, a widow, mother of the appellants, Ethel L. McClintock Nadham (Tolouse) and Earl G. Tallmadge, by a former husband. No issue was born of the marriage of Mr. Burrow and Mrs. Tallmadge. At the time of his marriage to Mrs. Tallmadge, Mr. Burrow was a farmer, owning, besides other property, about eleven hundred acres of land in Whitman county, Washington. Mrs. Tallmadge also then owned property, but its character and extent are not shown by the record. During their married life together, covering a period of twenty-six years, they

accumulated considerable additional property, including about four hundred acres of land in Whitman county, besides personalty represented by stocks, bonds, mortgages, and various bank deposits. The record does not disclose whether this additional property was acquired as community or as separate property, or partly as the one and partly as the other. It does appear, however, that from 1912 to about 1925 both Mr. and Mrs. Burrow were engaged in farming the lands above mentioned. They then retired in prosperous circumstances, rented the farm lands, and spent a great part of their time in travelling.

In June, 1921, Mrs. Burrow executed a will, certain provisions of which are intimately related to this controversy. After the usual provisions with reference to proper burial and the payment of debts and funeral expenses, the will devised certain unimproved platted property to each of the appellants herein. Then follow the two clauses of the will which are particularly pertinent here, *viz*:

"Fifth. *My* six shares of the capital stock of the Pine City State Bank, a corporation, of Pine City, Washington, *bonds* [which the respective contestants agree meant *savings accounts*] *of the Tacoma Savings & Loan Association, a corporation, of Tacoma, Washington,* and savings accounts with the Washington Mutual Savings Bank, a corporation of Seattle, Washington, or in whatever converted form said described property may be at the time of my death, and the accumulated income thereof, I give and bequeath to my said daughter Ethel L. McClintock and son Earl G. Tallmadge, to be divided equally between them, share and share alike.

"Sixth. All the rest, residue and remainder of my estate, real, personal or mixed, wheresoever situate, of which I may die seized or possessed or *to which I* may be entitled or interested in at the time of my death, I give, bequeath and devise to my beloved husband Henry C. Borrow [sic] and his heirs absolutely and forever." (Italics ours.)

In this action, we are concerned with the bonds, or savings accounts, in the Tacoma Savings & Loan Association only. The "savings accounts" in the Washington Mutual Savings Bank are more particularly involved in the companion case of *Tolouse v. Ellwart, post* p. 711. The record does not disclose, other than what may be inferred from the language of the will itself, whether Mrs. Burrow had any saving account, or accounts, in the Tacoma Savings & Loan Association at the time she executed the will.

The testatrix nominated and appointed her husband, Henry C. Burrow, as executor, to act without bond or other security. In passing, we may state that the record does not show whether or not Mr. Burrow during the lifetime of his wife likewise made a will. The briefs of both counsel suggest, however, that there has been some previous litigation, in the superior court for Whitman county, between the contesting parties herein, relative to an alleged *lost* will of Henry C. Burrow.

It appears that, on January 7, 1924, two and a half years after Mrs. Burrow executed her will, she and Mr. Burrow opened a savings account, under the names of both of them, in the Tacoma Savings & Loan Association. The initial deposit was one thousand dollars. At the time of the commencement of this action, additional deposits, together with dividend credits, had increased the amount of the account to $15,638.03. It is this savings account which is the subject of the present litigation.

On April 8, 1925, a second savings account was opened in the Tacoma Savings & Loan Association, with an initial deposit of seven hundred dollars. This account was opened in the name of Agnes T. Burrow alone, and at the time of the commencement of the present action additional deposits and dividend credits

had increased the amount thereof to $4,615.90. While this second account plays a prominent part in the issues here involved, appellants' rights thereto are not now disputed.

Mrs. Burrow died July 10, 1938, and at that time the two savings accounts showed approximately the same balances as those above stated. On August 5th the will was admitted to probate in the superior court for Whitman county, and Mr. Burrow qualified as executor. About two weeks later, he filed a general inventory showing, among other assets of the estate of Agnes T. Burrow, the following items:

| | "[Amount of Deposit at that time.] | Appraised at |
|---|---|---|
| "Tacoma Savings & Loan Association (Tacoma) | $4491.57 | $4084.74 |
| Washington Mutual Savings Bank (Seattle) | 1808.07 | $1826.98 |
| First Federal Savings & Loan Association (Spokane) | 780.00 | $ 788.16 |
| Mutual Building & Loan Association (Long Beach, California) | 2706.00 | $1777.31" |

It will be observed that the inventory does not include the amount of the larger savings account in the Tacoma Savings & Loan Association, which is the subject of this controversy, but sets forth only the approximate amount of the smaller savings account therein, concerning which there is no dispute here. It will also be observed that the inventory includes the savings accounts in the First Federal Savings & Loan Association and the Mutual Building & Loan Association, respectively, neither of which was specifically mentioned in the above-quoted provisions of Mrs. Burrow's will. While these two latter accounts figure argumentatively in this litigation, appellants' rights thereto are not now disputed. Following the filing of the inventory, the property of the estate was duly appraised, as finally reported, at $28,101.23.

In due course of administration, Mr. Burrow, the executor, on February 14, 1939, filed in the probate cause his final account and petition for distribution, setting forth therein the estate to be distributed. The final account itemized specifically the balance for distribution as follows:

"Cash on hand (rent from house) . . . . . . . . . . $ 140.00
"Personal Property . . . . . . . . . . . . . . . . . . . . . . . 9,763.*66*
 Household equipment . . . . . . . . . . . . . . . .$ 150.00
 *Account* Tacoma Savings & Loan Ass'n,
 Tacoma . . . . . . . . . . . . . . . . . . . . : . . . . . . 4,209.05
 *Account* Washington Mutual Savings
 Bank . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,863.32
 *Account* First Federal Savings & Loan
 Ass'n, Spokane . . . . . . . . . . . . . . . . . . 811.87
 *Account* The Mutual Building & Loan
 Ass'n, Long Beach, Cal. . . . . . . . . . . . . 1,845.36
 One 1934 Ford Sedan. . . . . . . . . . . . . . . . 250.00
 1441 Bushels of bulk wheat. . . . . . . . . . . 634.04
 $ 9,903.66
"Real estate [as specifically described in the
 final account] . . . . . . . . . . . . . . . . . . . . . . . 18,590.00

 "Total for distribution. . . . . . . . . . . . . . . $28,493.66"
 (Italics ours).

Again it will be noted that no mention is made of the larger savings account in the Tacoma Savings & Loan Association, which is the subject of this litigation, but mentions only an "account" therein of $4,209.05.

The final account and petition for distribution then recited that

". . . part of said property was the separate estate of the decedent and according to the terms of the said will, so admitted to probate, it was devised and bequeathed as follows, to-wit:

"[Here follows a description of certain real estate devised to Ethel L. McClintock Nadham, daughter of the decedent.]

"*The savings accounts* in Tacoma Savings and Loan Association, Tacoma, Washington; Washington Mutual Savings Bank, Seattle, Washington; First Federal Savings & Loan Association, Spokane, Washington; and

The Mutual Building & Loan Association, Long Beach, California, were devised and bequeathed to Ethel L. McClintock Nadham, decedent's daughter, and Earl G. Tallmadge, decedent's son, share and share alike.

"[Here follows a description of certain real estate devised to Earl G. Tallmadge, decedent's son.]

"That the balance of the property was community property and according to the terms of the said will was devised and bequeathed to Henry C. Burrow." (Italics ours.)

At this point, we call attention to the fact that Mrs. Burrow's will did not in specific terms declare what portion of her estate was separate property and what portion thereof was community property. It should also be noted, in this connection, that the will did not "according to the terms" thereof bequeath the two savings accounts in the First Federal Savings & Loan Association and the Mutual Building & Loan Association, respectively, to appellants, as reported by the executor in his final account and petition for distribution. On the face of the will, those two savings accounts fell, rather, within the sixth, or residuary, clause, of which Mr. Burrow himself was the beneficiary.

Due notice of hearing on the final account and petition for distribution was given, and on March 16, 1939, a hearing was had before the court sitting in probate. Proof having been offered the court entered its order approving the final account and concluding with a decree of distribution. The controversy giving rise to this appeal grows directly out of this order and decree, and the problem presented for our solution depends largely upon a determination of the scope, meaning, and effect of this final pronouncement. We shall therefore quote the material provisions thereof. The decree recites:

"And it appearing . . .

"That part of said estate is community property and part is separate property; . . .

"That according to the terms of the said will of Agnes T. Burrow, deceased, that part of the said estate which is community property was devised and bequeathed to Henry C. Burrow, and is described as follows: [Here follows a description of all the property of the estate except that described or referred to in the succeeding paragraphs of the decree as hereinafter set forth.]

"That according to the terms of the said will of Agnes T. Burrow, deceased, that part of the said estate which is separate property was devised and bequeathed as follows:

"The following described real estate was devised and bequeathed to Ethel L. McClintock Nadham, decedent's daughter, to wit: [Two certain lots described in the will as being devised to the son and daughter, respectively].

"*The savings accounts in the Tacoma Savings & Loan Association, Tacoma, Washington*; the Washington Mutual Savings Bank, Seattle, Washington; First Federal Savings & Loan Association, Spokane, Washington; and The Mutual Building & Loan Association, Long Beach, California; were devised and bequeathed to Ethel L. McClintock Nadham, decedent's daughter, and Earl G. Tallmadge, decedent's son, share and share alike.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the residue of said estate of Agnes T. Burrow, deceased, now remaining in the possession of said executor, and any property not now known or discovered, which may belong to the estate, or in which the estate may have an interest, be and the same hereby is distributed to Henry C. Burrow, Ethel L. McClintock Nadham and Earl G. Tallmadge according to the terms of the Will of Agnes T. Burrow, deceased, *as set forth herein*; that the administration of said estate be brought to a close and that said Henry C. Burrow be and he hereby is discharged from his trust as executor." (Italics ours.)

It thus appears that the final decree performed

three functions: (1) It construed the provisions of the will by declaring what portion of the estate, as set forth in the inventory, was separate property and what portion thereof was community property; (2) it distributed the separate property, as so classified, to the appellants, and the community property, as so classified, to Mr. Burrow; and (3) by an "omnibus clause" it distributed any property then remaining in the possession of the executor, together with any property not then known or discovered, to Mr. Burrow and the appellants "according to the terms of the will of Agnes T. Burrow, *as set forth herein.*" (Italics ours.) It will not be amiss to explain, at this point, that the present litigation grows out of the fact that the final decree of distribution and, in one instance, the final account and petition for distribution, refer to "the savings *accounts*," rather than to a *single* account, in the Tacoma Savings & Loan Association.

On March 29, 1939, thirteen days after the entry of the final decree of distribution, Henry C. Burrow died. Respondent herein, Arnold Ellwart, a nephew of Mr. Burrow, was appointed, and qualified, as administrator of the latter's estate. Some time thereafter he made demand upon the Tacoma Savings & Loan Association for the payment to him of the amount of the larger savings account, which still stood in the names of Mr. and Mrs. Burrow. The savings and loan association refused to make payment unless a proper waiver should be obtained from these appellants. When it appeared that appellants would not execute a waiver, the association instituted this action of interpleader.

The theory upon which the trial court entered judgment in favor of the administrator of the Henry C. Burrow estate was that the savings account here in question represented a joint account, involving community property and constituting a joint tenancy, and

that on the death of Mrs. Burrow it consequently became the sole property of her surviving husband. Appellants' first contention is that, under the law governing that account, Henry C. Burrow did not become the owner thereof by virtue of his surviving Mrs. Burrow.

■ The doctrine of survivorship as an incident of joint tenancy was abrogated in this state in 1885 by an act of the legislature entitled: "An Act to Abolish The Right of Survivorship in Estates held in Joint Tenancy." Laws of 1885-6, p. 165 (Rem. Rev. Stat., § 1344 [P. C. § 3426]); *In re Ivers' Estate,* 4 Wn. (2d) 477, 104 P. (2d) 467, and cases therein cited.

In 1933, however, the legislature restored the doctrine of survivorship as an incident of joint tenancy arising out of joint ownership of shares in savings and loan associations. Laws of 1933, chapter 183, p. 729, § 41 (Rem. Rev. Stat. (Sup.), § 3717-41 [P. C. § 4564-61]). *Nelson v. Olympia Federal Savings & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019; *In re Ivers' Estate, supra.* But that act operated prospectively only, and not retroactively. Section 100 of that act (Rem. Rev. Stat., (Sup.), § 3717-100 [P. C. § 4564-119]) specifically provided that existing contracts and obligations and renewals thereof were not impaired by the act, but might be enforced to the same extent and in the same manner as though the act had not been passed. The savings account here in question was opened in 1924, nine years prior to the adoption of the savings and loan association act, and hence the contract and obligation represented by that account were not affected by that act, but remained enforcible under the preexisting law. *Larson v. Fidelity Savings & Loan Ass'n,* 178 Wash. 516, 35 P. (2d) 108. Since the 1933 act was not retroactive, all joint accounts which had been opened in savings and loan asso-

ciations prior to the passage of the act remained subject to the laws of descent and distribution of property in general, whether such property were separate or community, or whether held in joint tenancy or by tenancy in common. In no event was a right of survivorship created as to such accounts merely by virtue of a joint tenancy thereof. *In re Ivers' Estate, supra.*

It is true, as stated in the *Ivers'* case, that, by contract between the parties concerned, a bank account *may* take the form of a joint ownership with the right of survivorship annexed, and that the right to create a joint tenancy with the annexed feature is not affected by a statute abolishing the right of survivorship as it existed at common law, if the parties intend, and clearly express their intention, to create such complete relationship.

In the instant case, however, there was no contract creating a joint tenancy with right of survivorship annexed, nor does the evidence establish an intention to create a relationship having that feature. The savings account was opened by merely signing a printed form of subscription for one or more shares in the Tacoma Savings & Loan Association, which authorized the association to *pay withdrawals* to either of the signatories, regardless of the death or disability of the other. But no provision whatever was made therein for survivorship rights. Under the law as then obtaining and as applicable to that transaction, the authority conferred by the subscription card was simply for the purpose of protecting the association in the event that one of the parties should draw out the proceeds of the account after the death or disability of the other. *Daly v. Pacific Savings & Loan Ass'n,* 154 Wash. 249, 282 Pac. 60.

In support of his contention, respondent cites and

relies upon *In re Peterson's Estate,* 182 Wash. 29, 45 P. (2d) 45, and *Nelson v. Olympia Federal Savings & Loan Ass'n,* 193 Wash. 222, 74 P. (2d) 1019. The *Peterson* case involved a savings account in a mutual savings bank. The account was opened in 1921 and was subject to Laws of 1915, chapter 175, p. 568, § 19(2), (Rem. Rev. Stat., § 3348 [P. C. § 373(3)]), which specifically revived the doctrine of survivorship as an incident of joint tenancy in cases of joint accounts in mutual savings banks. *Winner v. Carroll,* 169 Wash. 208, 13 P. (2d) 450. The *Peterson* case, therefore, had a supporting statute at the time the account was opened, but in this case there was no comparable statute creating the right of survivorship until long after the account had come into existence. The case of *Nelson v. Olympia Federal Savings & Loan Ass'n, supra,* involved a savings account in a savings and loan association, just as in the case here, but in the *Nelson* case the account was opened *after* the savings and loan association act, passed in 1933, became effective, contrary to the situation presented in the case at bar. Since the savings account here in question was opened prior to the passage of the act which provided for survivorship as an element of joint tenancies involving joint accounts in savings and loan associations, the judgment cannot be upheld on the theory adopted by the trial court.

Appellants' second contention is that by the final decree of distribution they became the distributees of the savings account here in question, and that such decree is now *res judicata.* Respondent admits, and likewise asserts, that the final decree is *res judicata,* but he contends that by that decree the savings account in question was distributed to Henry C. Burrow. The trial court made findings to the effect that this particular savings account was opened with community funds, that the account was never brought

to the attention of the probate court, that no part of it was ever distributed by the decree of distribution except by the "omnibus clause," and that the funds, being community property, passed to Henry C. Burrow by the terms of Mrs. Burrow's will.

As already stated, the final decree of distribution construed the terms of Mrs. Burrow's will as devising and bequeathing to her husband, Henry C. Burrow, all of her community property, specifically described in the decree, and as devising to her children, appellants herein, all of her separate property, likewise specifically described in the decree, and then by an "omnibus clause" distributed the residue of the estate and any property not then known or discovered, belonging to the estate or in which the estate had an interest, to Henry C. Burrow and the appellants *according to the terms of the will as set forth in the decree.* No appeal from that decree was ever taken by anyone, and hence it became final and binding upon all persons having any interest in the estate and upon all the world as well. *Golden v. McGill,* 3 Wn. (2d) 708, 102 P. (2d) 219; *Farley v. Davis,* 10 Wn. (2d) 62, 116 P. (2d) 263. It is therefore immaterial now whether the construction placed upon the will was right or wrong. In either event it is conclusive.

Appellants' principal contention in this connection is founded upon the provision in the final decree which reads:

"*The savings accounts* in the Tacoma Savings & Loan Association, Tacoma, Washington, . . . were devised and bequeathed to Ethel L. McClintock Nadham, decedent's daughter, and Earl G. Tallmadge, decedent's son, share and share alike." (Italics ours.)

The argument is, of course, that, since the savings account here in question *was* in the Tacoma Savings & Loan Association, it comes within the scope and purview of the decree, and by express direction therein

was distributed to the appellants. The argument is to some extent persuasive, and in the ordinary case might be very convincing. But here we have a peculiar and distinctive situation. As disclosed by the record, this particular savings account was not in existence at the time the will was executed, but was opened two and a half years later. There is no evidence that the account was composed of separate funds belonging to Mrs. Burrow, nor is there any evidence rebutting the presumption that the account, standing in the names of both husband and wife, was community property. The fifth clause of the will, wherein the bequest is made to the appellants, begins with the word "my" and then refers to six shares of capital stock of the Pine City State Bank, bonds (savings accounts) of the Tacoma Savings & Loan Association, and savings accounts with the Washington Mutual Savings Bank. The inventory filed by the executor included a savings account standing in Mrs. Burrow's name in each of those two financial institutions, but it did not include the savings account with which we are here concerned, nor did it include a similar joint account in the Washington Mutual Savings Bank, which is not involved in this particular action. The final account and petition for distribution, constituting one instrument, lists a savings *account* in each of four different financial institutions, including the two last above mentioned. The amount of the Tacoma Savings & Loan Association account is given as $4,209.05, thus clearly identifying the account standing in the name of Mrs. Burrow individually, and excluding the joint account here in question. Wherever the plural term "savings accounts" is employed in the final account and petition for distribution, it is used to designate the savings accounts in all four institutions collectively. It is clear from the context of the instrument that it was intended

to designate but one account, not several accounts, in each of those institutions.

Since both parties were claiming to be entitled to the disputed fund by virtue of the decree of distribution in the probate cause, it became necessary for the trial court in this action to determine the proper construction to be placed upon that decree. In their answer and cross-complaint, appellants incorporated by reference, as part thereof, the record and files in the probate case, and it appears therefrom that the trial judge in the case at bar was the same judge who had heard the matter and entered the decree of distribution in the probate proceedings involving Mrs. Burrow's estate. The trial judge was thoroughly familiar with the proceedings which led to the final decree in that estate. Having full knowledge of that decree and the issues which it covered, the trial court had the right to interpret the decree so as to provide for its proper enforcement. *Koen v. Fort Bent Ditch Co.,* 67 Colo. 34, 185 Pac. 653; *Cascade County v. Weaver,* 108 Mont. 1, 90 P. (2d) 164. For the purpose of determining the legal operation and effect of the decree of distribution, the court was also privileged to look to the entire record upon which the decree was based. *Gollehon v. Gollehon,* 178 Wash. 372, 34 P. (2d) 1113; *George v. Jenks,* 197 Wash. 551, 85 P. (2d) 1083; 1 Freeman, Judgments (5th ed. 1925) 134, § 77; 34 C. J. 501, Judgments, § 794.

A part of the record was the will itself. Although the will could not be used to impeach the decree of distribution, it could be used in aid of the decree. *Luscomb v. Fintzelberg,* 162 Cal. 433, 123 Pac. 247. While a will speaks as of the date of the death of the testator, the intention of the testator is to be determined as of the time of the execution of the will. *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015,

and cases therein cited. At the time Mrs. Burrow executed the will, the savings account here in question was not in existence, and when it did come into existence it took the form not of a separate account, but that of a joint account. Under our law, Mrs. Burrow could not by will dispose of the entire account, but only of her interest therein.

In *Herrick v. Miller,* 69 Wash. 456, 125 Pac. 974, we quoted with approval the following statement from *Sherman v. Lewis,* 44 Minn. 107, 46 N. W. 318:

"The rule is that a general bequest and devise of the testator's property will be construed as intended to extend only to such property as he could dispose of by will. Also, that, even where specific property is disposed of by will, in which the testator had only a partial interest, the courts will, if possible under any reasonable rule of construction, construe the language of the will as intended to apply only to the interest which the testator was able to dispose of; the presumption being that he did not intend it to apply to that over which he had no disposing power."

See, also, 69 C. J. 365, Wills, § 1379.

The record herein also disclosed, by the inventory in the probate cause, that the savings account here in question was never brought into the estate. The trial court had the right to take into consideration all the facts shown by the record, as outlined above, and to employ the rules of construction to which reference has just been made, in its endeavor to arrive at a proper interpretation of the decree of distribution. When all these factors are taken into consideration, the interpretation which the trial court placed upon the decree of distribution seems not only logical, but imperative as well.

This conclusion is fortified by a reference to the "omnibus clause" in the decree. By that clause, the probate court distributed the residue of the property,

which would include the savings account here in question, on the basis of awarding to Mr. Burrow so much of the residue as was community property, and to appellants so much as was separate property. Since this savings account was community property, as determined by the court, it passed to Mr. Burrow.

In support of their contention, appellants cite the following cases: *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492; *McDowell v. Beckham,* 72 Wash. 224, 130 Pac. 350; *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386; *Bremerton Creamery & Produce Co. v. Elliott,* 184 Wash. 80, 50 P. (2d) 48; *O'Leary v. Bennett,* 190 Wash. 115, 66 P. (2d) 875. The composite effect of the holdings in those cases may be expressed thus: A decree of distribution stands upon the same footing as any other judgment rendered by a court of general jurisdiction; it constitutes in itself a construction of the will of the decedent; and even though it be erroneous in law, yet if it be rendered upon due process of law and no appeal therefrom is taken, it becomes a final and conclusive adjudication determining what property belongs to the decedent's estate, the nature thereof, and the person or persons who have acquired the title to it.

In compliance with the principles just stated, the decree of distribution determined that certain real estate and the savings accounts *set forth in the inventory and in the final account* (which did not include the savings account here in question) constituted separate property to which the appellants were entitled; that the "balance of the property" constituted community property to which Mr. Burrow, husband of the deceased, was entitled; and that any property remaining *in the possession of the executor,* Mr. Burrow, and any property not then known or discovered, should

be distributed according to the terms of the will as construed by the court in the decree, with the result that Mr. Burrow would be entitled to receive all remaining or subsequently discovered community property in which Mrs. Burrow previously had an interest, and appellants would be entitled to receive all remaining and subsequently discovered separate property theretofore belonging to Mrs. Burrow. Upon the basis of the sixth, or residuary, clause of the will, this particular savings account passed to Mr. Burrow, and, since the account was community property, it likewise passed to him under the "omnibus clause" of the decree as construed by the trial court in the present action.

Appellants advance the argument that Mr. Burrow must have represented to the court in the probate proceeding that *all* savings accounts were the separate property of Mrs. Burrow, because he did in fact include, as such property, in his inventory and final report, the two savings accounts in the First Federal Savings & Loan Association and the Mutual Building & Loan Association, respectively, whereas he would otherwise have been legally entitled to claim those accounts under the residuary clause of the will. To accept that argument would require us to enter the domain of pure conjecture. The trial court in this case, who was likewise the judge handling the probate matter, would know probably better than anyone else just what representations were made by Mr. Burrow in the probate proceeding, and the conclusion to be drawn from the findings which the trial court made in the case now on appeal is contrary to the argument advanced by appellants.

Appellants' third, and final, contention is that in any event the doctrine of election estops the respondent from now claiming the savings account here in question. Appellants' position in this respect is that, by

the terms of Mrs. Burrow's will, as construed by the probate court in its decree of distribution, Mr. Burrow became the devisee and legatee of all of Mrs. Burrow's community property; that all of the savings accounts to which reference has heretofore been made were classified by the court as the separate property of Mrs. Burrow, although in law the two joint savings accounts, including the one here in question, may in fact have been community property; that, since Mr. Burrow accepted all of the community property awarded to him under the decree, he would in his lifetime have been estopped, under the rule of election, or acceptance, from claiming any property found by the court to have been devised and bequeathed by Mrs. Burrow to the appellants as her separate property; and that the respondent administrator, standing in no better position than Mr. Burrow, is likewise estopped. In other words, the contention is that Mr. Burrow, having taken under the will, as construed by the court, must accept all the terms of the will, its burdens as well as its benefits, and therefore could not raise an adverse claim to property which the decedent had undertaken to give to the appellants.

It is apparent that the argument is founded upon the premise that the joint savings accounts were classified as separate property and as such were bequeathed to appellants. But, as we have already seen, the joint savings accounts, including the one here in dispute, were never brought directly into the probate proceeding and hence were never classified either as separate property or as community property; and if they were distributed at all, it was only by virtue of the "omnibus clause" of the decree of distribution, under the terms of which they would pass as community property to Mr. Burrow.

The doctrine of "election," as applied to the law of wills, means simply that one who takes under a

will must conform to all its provisions, and if he accepts a benefit thereunder he must renounce every right inconsistent therewith. *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255; *In re Goss' Estate,* 73 Wash. 330, 132 Pac. 409; *Andrews v. Kelleher,* 124 Wash. 517, 214 Pac. 1056; *Golden v. McGill,* 3 Wn. (2d) 708, 102 P. (2d) 219; 69 C. J. 969, Wills, § 2162. See, also, cases listed in 14 Words & Phrases (Perm. ed.) p. 184 *et seq.*

 Under the construction placed upon the will by the probate court, and under the interpretation which the trial court in this case placed upon the decree of distribution, as heretofore indicated, Mr. Burrow did conform to the provisions of the will as thus construed, for he took no property that had been classified as Mrs. Burrow's separate property, but only that which had been classified as community property and which had been devised and bequeathed to him by the will. He made no claim inconsistent with the benefits which he received, and hence he was not put to an election.

 Appellants argue further that, since Mrs. Burrow attempted to make a testamentary disposition of savings accounts which were community property in which Mr. Burrow had an interest, he would be compelled to relinquish his claim of title to that property in order to take the other benefits afforded him by the will. That argument is based upon the general rule that, when one by his will assumes to make a disposition of property which belongs to another, or in which the other has an interest, and the testator at the same time gives a portion of his own estate to the person whose rights of ownership he had thus assumed to transfer, such owner and donee is put to an election whether he will assert his rights to the property which was his, or in which he had an interest, or whether, on the contrary, he will accept the other benefits given to him in the will. That rule, how-

ever, applies only in a case where the will shows upon its face a clear intention on the part of the testator to dispose of property which, in fact, does not belong to him. In *Herrick v. Miller,* 69 Wash. 456, 125 Pac. 974, a question similar to the one raised by appellants herein was presented, and this court laid down the rule as stated in 1 Pomeroy, Equity Jurisprudence (3d ed.), § 472 (2 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 472):

"The first and fundamental rule, of which all the others are little more than corollaries, is: In order to create the necessity for an election, there must appear upon the face of the will itself, or of the other instrument of donation, a clear, unmistakable intention, on the part of the testator or other donor, to dispose of property which is in fact not his own. This intention to dispose of property which in fact belongs to another, and is not within the donor's power of disposition, must appear from language of the instrument which is unequivocal, which leaves no doubt as to the donor's design; the necessity of an election can never exist from an uncertain or dubious interpretation of the clause of donation. It is the settled rule that no case for an election arises unless the gift to one beneficiary is irreconcilable with an estate, interest, or right which another donee is called upon to relinquish: if both gifts can, upon any interpretation of which the language is reasonably susceptible, stand together, then an election is unnecessary."

Further along in the *Herrick* case, the opinion declares that probably as clear and comprehensive a statement of the doctrine of election as can be found is that made in *Sherman v. Lewis,* 44 Minn. 107, 46 N. W. 318, as follows:

"The rule is that a general bequest and devise of the testator's property will be construed as intended to extend only to such property as he could dispose of by will. Also, that, even where specific property is disposed of by will, in which the testator had only a partial interest, the courts will, if possible under any

reasonable rule of construction, construe the language of the will as intended to apply only to the interest which the testator was able to dispose of; the presumption being that he did not intend it to apply to that over which he had no disposing power. Also that, in order to raise a case for an election, the intention as manifested by the will itself must be clear and decisive. It must be clear, beyond reasonable doubt, that the testator has intentionally assumed to dispose of the property of the beneficiary, who is required on that account to give up his own gift. [Citing authorities.] And while parol evidence is admissible, to the same extent as in other cases, in aid of the construction of written instruments,—that is, to show the condition of the subject-matter, and the surrounding circumstances, so far as to place the court in the position of the testator,—yet the intent of the testator to dispose of that which was not his must appear from the words of the will itself, and cannot be proved by evidence *dehors* the instrument."

There is a strong presumption in every case that the testator intended to dispose only of property over which he has testamentary power of disposition. Mrs. Burrow did have testamentary power of disposition over the savings accounts which stood in her separate name, but she did not have such power over the joint savings accounts. It is therefore to be presumed, in the absence of clear and unmistakable proof to the contrary, that she intended to give to appellants only her separate savings accounts. The trial court's findings are in harmony with that presumption, and the conclusion which follows therefrom must be that the savings account here in question passed to Mr. Burrow under the terms of the will as construed in the decree of distribution.

For the reasons and upon the grounds herein assigned, the judgment of the trial court is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and BLAKE, JJ., concur.