**In the Matter of the ESTATE of Elizabeth R. SHARP, Deceased.**

**No. 44678.**

Supreme Court of Oklahoma.

March 20, 1973.

Rehearing Denied July 2, 1973.

Rainey, Flynn, Welch, Wallace, Ross & Cooper, by, W. R. Wallace, Jr., Oklahoma City, for appellant, Edwin M. Reardon III.

Walker & Watson, by, H. B. Watson, Jr., Oklahoma City, for appellee, James Reardon Sharp, Executor of the Estate of Elizabeth R. Sharp, Deceased.

BARNES, Justice.

When the above named decedent, hereinafter referred to as "Mrs. Sharp" or "testatrix," died, domiciled in Tulsa County, her last will and testament contained (among others) the following bequest:

"I give and bequeath unto my brother, Edwin M. Reardon, an amount of cash equivalent to the value of the stock I now own in Standard Oil Company of New York and the First National Bank of Dallas, Texas, said value to be fixed as of the date of my death."

After it was found, upon an inventory of Mrs. Sharp's property after her death, that it included no such stock, her son, James R. Sharp, who had been appointed executor of her estate (after his nomination in her will), petitioned the court to ignore this bequest in ordering distribution of her estate. Her brother, more fully referred to as "Edwin M. Reardon III", objected; and, after a trial of the matter, the trial court, after filing his written Findings of Fact and Conclusions of Law, determined that the bequest had "failed", and ordered the distribution sought by the executor-son.

In his present appeal, Reardon, hereinafter referred to, for brevity and clarity, by his nickname of "Eddy", contends that the trial court erred, not only in his conclusions as to the admissibility of certain evidence, but also as to its weight. Since the arguments submitted present unique questions concerning ambiguities in wills, never previously before this Court, we will deal with both aspects of the trial court's determination.

Grammatically, the language of the subject bequest is seemingly clear, but when it developed, after testatrix' death, that she had no Standard Oil Company of New York or First National Bank of Dallas stock, a latent ambiguity in the bequest became apparent. In this connection, see In re Estate of Russell, 69 Cal.2d 200, 70 Cal. Rptr. 561, 444 P.2d 353, 357–358.

At the trial, it was established that the parties' grandfather, E. M. Reardon, who had died, domiciled in Dallas, in 1924, had acquired during his lifetime 120 shares of stock in what was then The American Exchange Bank of Dallas and 3,000 shares of stock in what was then the Magnolia Petroleum Company; that, at his death, grandfather Reardon had left this stock (together with the rest of the residue of his estate) in what we will call the "Reardon Trust" for Mrs. Sharp and other heirs referred to in the codicil to his will, subject to the provisions for devolution therein; and that said Trust was still in control and possession of this Reardon property at the time Mrs. Sharp's will was executed in 1965. After it was stipulated that at one time after Reardon's death, Magnolia Petroleum Company's name changed to Standard Oil Company of New York and that the Reardon Trust's Oil Company stock had changed its form, multiplied and increased in value as the result of corporate mergers, stock dividend payments, changes, and reinvestments, until at Mrs. Sharp's death in September, 1965, it had become 4,782 shares of stock in Socony Mobil Oil Company, and that, somewhat similarly, The American Exchange Bank stock had become 9,426 shares of stock in Dallas' First National Bank, and that the two stocks then had a total value of $863,309.25, the trial court permitted Eddy, in support of his claim that he should be distributed cash from the testatrix' estate equivalent to one-half of this stock value ($431,654.63), to introduce, over the executor-son's objections, certain extrinsic evidence hereinafter described, to show that this stock was what was referred to in the subject bequest. Having allowed this evidence to be introduced because it was not being presented to a jury, the court, in his above mentioned Findings of Fact and Conclusions of Law, determined that it was inadmissible. In this, we think he erred, and we are of the opinion that, to the extent such evidence tended to clarify the language of the subject bequest, it was admissible.

We recognize factual differences between this case and Russell, and also differences in the wording of the Oklahoma statutes and their California counterparts (compare Title 84 O.S.1961 and 1971, §§ 151, 152, 157, and 158, with West's Ann. Prob.Code, §§ 101, 105, and 106). But those differences are not material here and constitute no obstacle to following Russell, supra, in this case. In this connection, notice Ferguson v. Patterson (U.S.C.A., 10th Cir.), 191 F.2d 584, 587, and its footnote citations.

From his position that the testatrix' bequest to her brother, Eddy, could only have been given effect if she, at the time of her death, had—in the sense of *possessing title* thereto—"owned" the stock therein referred to, it appears evident that Appellee is relying upon what Page on Wills denominates the "single plain meaning rule." According to Vol. 4, Section 32.10, of that work's Bowe-Parker Revision, that rule has been described (in material part) as follows:

> "Where there is nothing in the context of a will from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, and *where his words so interpreted are sensible with reference to extrinsic circumstances,* it is an inflexible rule of construction that the words of the will shall be interpreted in their strict and primary sense. . . ." (Emphasis added)

Assuming that the above is a correct statement of the rule and that it applies to the language of a bequest that measures its quantity, as well as to that which describes its subject (see Title 84 O.S.1961 and 1971, § 174, and Schubel v. Bonacker (Mo.), 331 S.W.2d 552, 556), we think this case comes within the exception to that rule because here the testatrix' reference to Standard Oil Company of New York and First National Bank of Dallas stock is not "sensible with reference" to the extrinsic circumstance that the testatrix owned no such stock. Therefore, though we recognize

that, without consideration of this extrinsic circumstance, there would be no "case of uncertainty, arising upon the face" of the testatrix' will, within the meaning of Section 152, supra, "a case of uncertainty" does arise "as to the application of" the will's subject provision. Accordingly, we have determined that the trial court erred in concluding that there was no ambiguity in the testatrix' will. And we hold, in accord with the California decisions cited in Russell, supra, that it was proper, in the present case, to take into consideration, under Section 152, supra, the circumstances under which the testatrix' will was made.

Circumstances forming the background of the execution of Mrs. Sharp's present will were shown to be substantially as hereinafter related. In grandfather Reardon's will, he vested title to The American Exchange Bank and Magnolia Petroleum Company stock in three Dallas men, Henry W. Coke, Rosser J. Coke, and Alex S. Coke, as Trustees of the Reardon Trust. The codicil to his will provided that the Trust was not to terminate until Mrs. Sharp's father and mother were both dead, and that after one of them died (providing Reardon's widow, Gertrude, was then dead) the Trustees should pay the survivor (of the two) and Mrs. Sharp and her brother, Eddy, each one-third of the Trust's net income. Grandfather Reardon's codicil also stated that, upon termination of the Trust, he devised and bequeathed "absolutely and in fee simple . . ." the Trust property to Mrs. Sharp and her brother, Eddy, "to be equally divided between them." It also provided, however, that if, upon termination of the Trust, either of these two was dead, leaving issue then living, the issue would take the portion of the estate that his or her parent would have taken had he or she been living when the Trust terminated.

Grandfather Reardon's widow, Gertrude, died a short time after he died, and his son, E. M. Reardon, Jr., died in 1927. Thus, thereafter Mrs. Sharp, her brother, Eddy, and her mother, Elizabeth Hardie Reardon, each received a one-third of the Reardon Trust's net income.

During the years between the testatrix' marriage to Mr. Sharp late in 1924 (about nine months after her father died) and Sharp's death in 1959, the couple's only surviving son, James R. Sharp, was born. During this period, the couple amassed a fortune, valued upon said husband's death at more than $4,500,000.00.

Mrs. Sharp's one-third share of the Reardon Trust's income averaged, beginning in 1960, slightly more than $4,000.00 annually, and she usually gave Eddy a Christmas present of $3,000.00.

For several years previous to 1965, Mrs. Sharp was represented by a Tulsa attorney we will refer to as "Mr. W.". He drafted two consecutive wills for her in 1961 and 1962, respectively.

For the drafting of her last will and testament in 1965, Mrs. Sharp engaged another Tulsa attorney we will refer to as "Mr. H.". Besides the bequest to Eddy in controversy here, this will contains a specific bequest to Eddy of $15,000.00 (to aid him in paying the medical expenses of his wife, who was fatally ill, and for the aid and comfort of the mother, Elizabeth Hardie Reardon, when needed.)

Attorney W. testified concerning contacts he had with the testatrix and the aforementioned wills he had drawn for her in 1961 and 1962, respectively.

Reardon's counsel also called to the witness stand Mrs. Louise McKenzie, who had been testatrix' secretary and bookkeeper and had also worked for both her husband before his death and for testatrix' executor-son after testatrix' death. Among other things, Mrs. McKenzie testified that she was present when the testatrix told attorney H. what to put in her last will. This witness also testified that she had discussed the Reardon Trust with testatrix down through the years, and she thought testatrix knew "the terms of that Trust", the provisions concerning its termination, and that its Trustees held the title to the

Dallas Bank and Oil Company stock. Mrs. McKenzie revealed the amounts of the aforementioned Reardon Trust income testatrix had received annually from the Reardon Trustees, and testified that, insofar as she knew, these amounts represented a one-third of said Trust's income for those years. She further testified that the testatrix was interested in finding out the Trust's value, but that her mother had advised her not to inquire of the Trustees about this because they had never charged any fees, so thereafter she made no such inquiry, "had no idea" how many shares of stock the Trust had, and never found out the Trust's worth. Mrs. McKenzie further revealed that she knew, from reading testatrix' will, that it contained the bequest in question and that, after her death, she (on her own initiative) wrote the Reardon Trustee, Rosser J. Coke, at Dallas, stating (among other things) that it bequeathed to Edwin M. Reardon an amount equal to the testatrix' "one-third of the stock held by the estate of E. M. Reardon", and asking to be informed "how many shares of Standard of New York and First of Dallas stock is in the estate."

Eddy, who, under the aforementioned provisions of grandfather Reardon's codicil, presumably shared equally with testatrix' executor-son, James R. Sharp, in the distribution of the First National Bank and Socony Mobil Oil company stock upon termination of the Reardon Trust at testatrix' mother's death in 1967, testified that the only time he and his sister had discussed the Reardon Trust with each other was about 1928, 1929, or during the depression of the 1930's, when the Trust's Oil Company stock was Magnolia Petroleum Company stock, and that he told her "what was in the estate at that time."

While we do not say that all of the evidence introduced at the trial was admissible, we think that the admissible part of it was sufficient to make it clear what the testatrix intended her cash bequest to her brother to be measured by, and that her intention was that it should be measur-

ed by the value (at her death) of what appeared to be the only corporate stock held by the Reardon Trust at the time she executed her will, namely, the Dallas First National Bank stock and the Oil Company stock she (apparently not knowing that the name of the corporation had changed) referred to as "in Standard Oil Company of New York. . . . ."

The trial court's error in considering the ambulatory character of wills appears to have been a factor in his decision. Instead of deciding it was just as "logical" to presume that the bequest's reference to the Bank and Oil Company stock referred to stock which the testatrix might have acquired before she died, "as any other presumption that might be relied upon", the trial court should have restricted his consideration to the evidence pertinent to the time when her will was executed. He obviously failed to recognize that this bequest's mention of the time of testarix' death referred—not to an amount of stock bequeathed—but merely to the stock value by which the amount of cash, therein bequeathed, was to be measured. In this contention, see In re Daniels' Estate (Okl.), 401 P.2d 493, and Tacoma Savings & Loan Ass'n v. Nadham, 14 Wash.2d 576, 128 P.2d 982. As said in Gorham v. Chadwick, 135 Me. 479, 200 A. 500, 117 A.L.R. 805 (cited in the Daniels case):

"Although a will speaks only from the maker's death, *the language used in the testament must be construed as of the date of its execution and in the light of the then surrounding circumstances.*" (Emphasis added)

When it is considered that at the time the testatrix executed her will, she was receiving benefits which ordinarily only a one-third owner of the Bank and Oil Company stock would have received, it is not surprising, or unusual, that she, as a layman, might have gotten into the habit, through those years, of regarding and speaking of herself as an owner of the stock, despite the various and more or less intricate provisions of her grandfather's

will and codicil affecting the stock's title, which, as far as the evidence shows, she had not seen for many years. Furthermore, as far as the record shows, attorney H., who drafted this last will, never saw the E. M. Reardon will and codicil and knew no more about the Reardon Trust than she was able or disposed to tell him. Under the circumstances, and in view of the parties' stipulation inducing the conclusion that the stock held by the Reardon Trust was the stock referred to in her will, we think the trial court erred in concluding, on the basis of certain presumptions he indulged in, that if the bequest had been referring to this stock, it would not have contained the technically incorrect reference to it as stock "I now own".

Nor do we consider applicable Appellee's argument that the trial court's order may be upheld on the ground that the legacy was adeemed. As we view them, the authorities he cites in support of this theory pertain to the *subjects* of such legacies rather than *to the testamentary language defining their quantum,* which latter is all that the present controversy directly concerns.

When we construe the language of the subject bequest as of the date testatrix executed her last will and testament, and in the light of what the evidence shows about the situation at that time, we can come to no other conclusion than that she intended to bequeath to her brother, Edwin M. Reardon III, an amount of cash equal to the value, at her death, of the fractional part of the two Reardon Trust stocks from which she had, for several years, derived an average annual income (as hereinbefore indicated) of more than $4,000.00. As that fractional part of said stock was one-third (instead of the one-half to which Reardon laid claim), the trial court's order should have directed distribution to the Appellant, out of the testatrix' estate, of the sum of $287,769.75. This conclusion is the only one which accords with the authorities hereinbefore cited and our statutory admonition (Sec. 151, supra) to give the testatrix' intention "effect as far as possible".

As it is our opinion that the order herein appealed from is clearly against the weight of the evidence and resulted from a misapplication of the law to the evidence, said order and/or judgment is hereby reversed, and this cause is remanded to the trial court with directions to properly accomplish distribution of the above sum of money to the Appellant, Edwin M. Reardon III.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, LAVENDER, SIMMS and DOOLIN, JJ., concur.